**Carol Jean Shaw LORD, Plaintiff and Appellant,**

v.

**Harold Elijah SHAW, Jr., Defendant and Respondent.**

No. 17993.

Supreme Court of Utah.

June 2, 1983.

Ronald C. Barker, Salt Lake City, for plaintiff and appellant.

Jeff R. Thorne, Brigham City, for defendant and respondent.

HOWE, Justice:

Appellant seeks the reversal of a summary judgment in which the trial court dismissed her complaint against her former husband, respondent, for torts he allegedly committed during their marriage.

Appellant and respondent, after nearly twenty years of marriage, were divorced in October of 1978. In September of 1980 appellant brought this suit consisting of six causes of action. Briefly summarized, she alleged:

(1) That in July of 1977 respondent willfully, maliciously and wrongfully seized her by the throat, choked her into semi-consciousness, then pushed her out the door and off the porch;

(2) That in August of 1977 the respondent seized her by the throat and strangled her into semi-consciousness;

(3) That in November of 1977 the respondent struck her and pushed her into a wall;

(4) That in June of 1976 the respondent willfully, maliciously and wrongfully struck and beat her. He also struck their minor child who attempted to intervene. Later that same evening, respondent threatened suicide and lay on top of appellant preventing her from calling for help;

(5) That in September of 1977 the respondent beat her, tore her clothes from her body, and forced her to submit to sexual intercourse against her will;

(6) That throughout the course of their marriage, the respondent "engaged in a course of conduct (including but not limited to the events and incidents outlined above), designed and calculated to cause [appellant] to suffer ... [Respondent's] conduct was willful, wanton, negligent, vicious, intentional, violent, and malicious, ..."

The court found that "[n]either party was under any disabilities nor are there any other circumstances which would stop the statutes of limitations from running." Among its conclusions of law, the trial court held:

The first five causes of action are actions based on the torts of assault, bat-

tery, or false imprisonment and are therefore barred by the appropriate statute of limitations, Utah Code Annotated Section 78–12–29 ...

That the sixth cause of action is also governed by the same statute of limitations and is therefore barred.

■ U.C.A., § 78–12–29(4) requires that actions for "libel, ... slander, assault, battery, false imprisonment or seduction" must be commenced within one year of their accrual. Assuming appellant's allegations to be true for purposes of summary judgment, clearly the first five causes of action arose from various assaults and batteries suffered by the appellant during marriage. She was choked, hit, beaten, lain on, stripped of her clothes and forced to submit to sexual intercourse. However, this suit (filed September of 1980) was not filed within one year of even the most recent (November of 1977) of those events.

Slightly different is the sixth cause of action. In it, appellant does not allege one specific incident. Rather, the gravamen of the cause of action is "a course of conduct (including but not limited to the events and incidents outlined above) [referring to the first five causes of action], designed and calculated to cause [appellant] to suffer ...." The allegation that respondent's "course of conduct" was "designed and calculated" suggests that his acts were intentional. Further, in parentheses appellant indicates that some of the specific acts comprising the course of conduct were "(including but not limited to the events and incidents outlined above) ...." The acts charged in the first five causes of action are intentional torts and, more specifically, arise from assaults and batteries suffered by appellant.

■ Specific averments in pleading are usually given precedence over general ones regarding the same matter. The specific averments are deemed to supplant, limit and control the general allegations. *Hall v. Delvat*, 95 Ariz. 286, 389 P.2d 692 (1964). The five causes of action referred to in the sixth cause of action limit and control the more general "course of conduct designed

and calculated to cause [appellant] to suffer." Both by the choice of the verbs, "designed and calculated," and by the reference to the other five causes of action, appellant alleged a sixth cause of action which arises from the intentional torts of assault and battery.

■ Moreover, appellant's descriptions and conclusions of law that respondent's "conduct was willful, wanton, negligent, vicious, intentional, violent and malicious" do not change the nature of her sixth cause of action. The substance of the pleading and the nature of the issues which are raised, rather than the pleader's designation of the cause of action, control the issue. *Cooper v. Cooper,* Okl., 616 P.2d 1154 (1980).

The insertion of "negligent" and perhaps "wanton" (as well as "gross disregard" at another point) among terms which suggest an intentional tort could arguably raise a question as to the nature of the sixth cause of action were it not for the preceding more specific factual allegations regarding respondent's course of conduct throughout the marriage. Appellant illustrated respondent's conduct by referring to the first five causes of action for assault and battery. Therefore, the reasonable construction of the sixth cause of action is that it is grounded in assault and battery. Like the first five causes of action, it was not filed within one year of its accrual and is barred.

■ Appellant argues that the statute of limitations should have been tolled because the doctrine of interspousal tort immunity disabled her from suing on these causes of action until the case of *Stoker v. Stoker,* Utah, 616 P.2d 590 (1980) was decided on August 8, 1980. That case held that the Legislature had abolished that common law doctrine insofar as it barred a wife's action for personal injuries intentionally inflicted upon her by her husband prior to their divorce.

The state of the law which foreclosed interspousal suit for an intentional tort prior to our decision in *Stoker v. Stoker,* supra, did not *disable* a wife from bringing an action against her husband for the torts he committed upon her. Interspousal immunity is not comparable to disabilities such as

minority, mental incompetency, and imprisonment which are statutorily delineated. See generally U.C.A., 1953, § 78–12–36. Compare *Vana v. Elkins,* 20 Ariz.App. 557, 514 P.2d 510 (1973) (regarding disability and the marriage relationship under a married women statute). In the present case the appellant was no more under a disability than was the plaintiff in *Stoker v. Stoker,* supra, who did bring suit and effected a change in the law. Both Mrs. Stoker and appellant had access to the courts at all times to seek a judicial recognition of the lifting of the immunity which prevented their recovery at common law. It was incumbent upon the appellant, as it was upon Mrs. Stoker, to file her action within the statutory period and if necessary, to seek a change in the case law which stood in her path to recovery.

Appellant relies upon *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353 (5th Cir.C.C.A.1972). The appellant in that action sought to recover from the United States the value of property which earlier in 1963 had been forfeited to the government because the property had been used in conducting a gambling business without the payment of taxes and without the registration required by federal tax law. In 1971 the Supreme Court of the United States had ruled in *United States v. U.S. Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 that the privilege against self-incrimination was a complete defense to a forfeiture proceeding based on a criminal prosecution against a gambler for failure to register and pay the related gambling tax. That ruling was expressly made retroactive by the court. That case was a sequel to the Supreme Court's 1968 decisions of *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, which cases had overruled two earlier decisions of that court and held that gamblers who properly assert their privilege against self-incrimination as a ground for failure to comply with the federal gambling tax law are immune from prosecution. In *Red Chevrolet* the government resisted the appellant's attempt to

recover the value of the property which had earlier been forfeited to the government on the ground that the applicable six year statute of limitations had long since run. The court held that the statute did not begin to run until the day of the decision of the Marchetti and Grosso decisions (January 29, 1968) because prior to that date the appellant had no reasonable probability of successfully prosecuting his claim, and allowing the claim to be prosecuted after that date would not prejudice the government since it did not ever have any defense to the unconstitutional taking.

We decline to follow the course taken by the court in *Red Chevrolet.* Here, unlike in that case, the long lapse of time might well prejudice the defendant in his defense of the tort actions. The incidents complained of by the plaintiff in her complaint appear to be but a part of a series of quarrels and disputes which beset their marriage and culminated in divorce. We think we would be placing an intolerable burden on the defendant to now, three and four years later, defend against the plaintiff's claims when the facts concerning how each dispute arose, what ensued and the extent of the injury to the plaintiff, if any, have been blurred by the passing of time. We think the better policy to be as we have discussed, supra, that the plaintiff be held to the one year statute of limitations even though the case law in this state was not favorable to her position at the time the incidents occurred. She was not entitled to sit by and wait for others such as Mrs. Stoker to pave the way for her.

Although cited by appellant for its statement of principle, the case of *Myers v. McDonald,* Utah, 635 P.2d 84 (1981) is inapposite in this instance as well. In that case, the guardian's ward was killed in an automobile accident but the guardian did not learn of his death until the statute of limitations had run. The trial court dismissed the case because the statute had run; we reversed, carving an exception to the statute where the guardian had no reasonable means of learning of the ward's death which gave rise to the cause of action. Appellant argues that like the guardian, she "had no alternative other than to bring her suit after the statutory limitation period had expired." As we have already observed, appellant had access to the courts at all times and was not without an alternative. Furthermore, she was aware of the facts giving rise to her causes of action from the moment they occurred.

■ As an additional ground for the summary judgment against the plaintiff, the trial court held that the plaintiff was barred by res judicata from suing her ex-husband for torts which occurred during the marriage, because his liability for any tort should have been litigated in the divorce action. We do not comment on this ruling other than to observe that actionable torts between married persons should not be litigated in a divorce proceeding. We believe that divorce actions will become unduly complicated in their trial and disposition if torts can be or must be litigated in the same action. A divorce action is highly equitable in nature, whereas the trial of a tort claim is at law and may well involve, as in this case, a request for trial by jury. The administration of justice will be better served by keeping the two proceedings separate. See *Windauer v. O'Connor,* 107 Ariz. 267, 485 P.2d 1157 (1971) where the Supreme Court of Arizona arrived at the same conclusion because of "the peculiar and special nature of a divorce action."

The summary judgment is affirmed. Costs to respondent.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.