Karen C. MARTINEZ, Plaintiff
and Respondent,

v.

Jess M. MARTINEZ, Defendant
and Petitioner.

No. 880189.

Supreme Court of Utah.

Sept. 16, 1991.

Kent M. Kasting, Kim M. Luhn, Salt Lake City, for Jess Martinez.

Neil B. Crist, Nelda M. Bishop, Bountiful, for Karen Martinez.

STEWART, Justice:

This case is here on a writ of certiorari to the Utah Court of Appeals to review the single issue of whether that court erred in fashioning a new remedy in divorce cases which it called equitable restitution and which may be awarded in addition to alimony, child support, and property. *See Martinez v. Martinez*, 754 P.2d 69 (Utah Ct. App.1988).

## I.  FACTS

Karen and Jess Martinez were married in 1968, while Mr. Martinez was serving in the United States Army.  Both had high school educations.  Mr. Martinez began his college education in 1970.  Three children were born to the marriage between 1970 and 1975.  While an undergraduate student, Mr. Martinez decided to attend medical school, a decision Mrs. Martinez did not agree with because she thought that medical school would be financially draining and would limit her husband's ability to spend time with the family.  Nevertheless, Mr. Martinez entered medical school in 1977 and graduated in 1981.  He obtained financial support for his education primarily from his own earnings, student loans, the G.I. Bill, and a bequest from his mother's estate.  Mrs. Martinez did not contribute financially to her husband's medical education.

Karen Martinez filed a complaint for divorce in 1983, and a decree of divorce was entered in 1985.  The trial court found that Dr. Martinez's gross annual income as a resident was $100,000 and that "[d]uring fourteen years that the parties lived together, [Mrs. Martinez] assisted extensively in [Dr. Martinez's] obtaining a college education, medical degree and internship. In addition, [she] made substantial sacrifices in order to facilitate the completion of [his] medical schooling and internship." Mrs. Martinez also earned a very minor amount of income for a short period which was used for family expenses.

The trial court awarded Mrs. Martinez the house the couple had acquired during the marriage and required her to make the mortgage payments of $309 per month. Dr. Martinez was awarded a lien on that property in the amount of $17,678, which represented half the equity in the home. The court also awarded Mrs. Martinez child support of $300 per month per child, and $400 per month alimony for a period of five years, with the condition that the alimony terminate after three years if she remarried.  Dr. Martinez was ordered to provide health, accident, and dental insurance for the children and to maintain a life insurance policy on himself for the benefit of the children.  He was also awarded the federal tax exemptions for two of the children. The personal property acquired during the marriage was divided equally.  Debts in the amount of approximately $19,000 for student loans were assigned to Dr. Martinez.  Finally, the court awarded Mrs. Martinez attorney fees in the amount of $2,500.  The trial court ruled that Dr. Martinez's medical degree and training were not a marital asset subject to distribution, but considered his right to practice medicine as it affected his income and ability to pay alimony and child support.

On appeal to the Court of Appeals, Mrs. Martinez contended, *inter alia,* that the child support, alimony, and attorney fees awarded by the trial court were so inadequate as to constitute an abuse of discretion and that the tax exemptions should not have been awarded to Dr. Martinez.  That court awarded the tax exemptions to Mrs. Martinez, increased the child support award to $600 per month per child, and awarded permanent alimony of $750 per month.  The court affirmed the trial court's award of only a portion of Mrs. Martinez's attorney fees.  *Martinez v. Martinez,* 754 P.2d 69, 72–75 (Utah Ct.App. 1988).  Relying on its own prior decisions, the Court of Appeals also held that Dr. Martinez's medical degree was not marital property subject to division. *See Martinez,* 754 P.2d at 75–76; *see also Rayburn v. Rayburn,* 738 P.2d 238 (Utah Ct.App.1987); *Petersen v. Petersen,* 737 P.2d 237 (Utah Ct.App.1987).

The court concluded, however, that a means should be devised to compensate Mrs. Martinez for the contribution she had made to the family.  The court stated that Mrs. Martinez "has earned an award of some permanent financial benefit, in her own right, that will allow her to share in the economic benefits achieved through their joint efforts" and that Dr. Martinez's earning capacity "must be recognized in fashioning those 'legal and equitable remedies' necessary to assist plaintiff to readjust her life."  754 P.2d at 75, 76.  Accordingly, the court created a new type of prop-

erty interest which it called "equitable restitution," to be awarded Mrs. Martinez in addition to her interest in the home, alimony, and child support.[1] Judge Jackson, in dissent, concluded that although Mrs. Martinez was entitled to a "generous but fair distribution of property and award of alimony," the concept of "equitable restitution" was not supportable. 754 P.2d at 82 (Jackson, J., dissenting).

The Court of Appeals listed five factors for trial courts to consider in determining when an award of "equitable restitution" should be made. Those factors are (1) the length of the marriage, (2) financial contributions and personal development sacrifices made by the spouse requesting equitable restitution, (3) the duration of the contributions and sacrifices during the marriage, (4) the disparity in earning capacity between the spouses, and (5) the amount of property accumulated during the marriage. 754 P.2d at 78. Although the court failed to indicate what weight those factors should be accorded or just how equitable restitution should be computed, it remanded the case to the trial court to determine what the amount of equitable restitution should be.

Dr. Martinez filed a petition for a writ of certiorari to this Court. We granted the petition solely on the issue of whether the Court of Appeals erred in devising "equitable restitution" as a new form of property in divorce cases.

■ Mrs. Martinez argues that the concept of equitable restitution is justified on the ground that the remedies available under current law for the distribution of property and the support of a former spouse are inadequate to provide a fair and equitable result. She contends, in essence, that a new form of property must be recognized by the courts to provide for a just and equitable distribution of the increased earning power which one spouse realizes from an advanced education acquired during the marriage. The "investment" referred to by Mrs. Martinez is whatever effort, support, and sacrifice that is made by the nonadvantaged spouse. (Hereinafter, we refer to the spouse receiving the education as the advantaged spouse and the other spouse as the nonadvantaged spouse.)

The increased earning capacity of the advantaged spouse is, according to Mrs. Martinez, "human capital," which she measures by the discounted present value of the projected increased future earnings of the advantaged spouse during the working life of that spouse. Mrs. Martinez urges us to hold that the nonadvantaged spouse is entitled to financial "reimbursement" for whatever efforts were made in assisting the advantaged spouse to obtain an advanced degree, even when wholly nonfinancial. She candidly admits that the purpose of characterizing that interest as a property interest is to make it a nonterminable interest, unlike alimony, which ordinarily terminates upon remarriage. In other words, the nonadvantaged spouse, even one who remarries, should benefit for life by sharing in his or her former spouse's increased earning capacity.

The Court of Appeals' concept of equitable restitution cannot be sustained for three reasons. First, the concept of equitable restitution is based on the proposition that a failed marriage is a venture akin to a commercial partnership in which the spouses invest their time and effort solely for remunerative activities. Although marriage is a partnership in some respects, a marriage is certainly not comparable to a commercial partnership. The efforts each spouse makes for the other and for their common marital interests cannot be quantified in monetary terms, their respective contributions netted out, and a balance struck at the termination of a marriage.

---

1. The Court of Appeals purported to rely on this Court's opinion in *Gardner v. Gardner*, 748 P.2d 1076 (Utah 1988), as the starting point to devise the property interest it called "equitable restitution." In *Gardner*, this Court sidestepped the issue of whether an advanced degree could be valued as a marital asset and made subject to distribution in a property award. We observed that there were sufficient marital assets in that case to distinguish it "from others in which equity and fairness required another solution." 748 P.2d at 1081. That statement, however, did not contemplate any such thing as "equitable restitution."

The very idea of marriage contemplates mutual effort and mutual sacrifice. Yet, in this case, Mrs. Martinez would value only her contribution to the marriage and not his. In any event, the spouses' contributions cannot be reduced to a common denominator that allows for a valid comparison in monetary terms. Indeed, the very attempt to do so would interfere with the trial court's ability to achieve an equitable result based on the needs of the spouses in light of the monetary resources available. For example, if a spouse avoids his or her marital responsibilities, the partnership theory might result in denying that spouse any award of support or property at divorce, irrespective of his or her need and the other spouse's ability to pay. That is not the law.

Second, an award of equitable restitution would be extraordinarily speculative. Although the Court of Appeals' opinion is somewhat unclear as to what kind of economic interest it intended to create or just how it should be computed, it did state, "An award of equitable restitution will not terminate upon plaintiff's remarriage, and may be payable in lump sum or periodically over time depending on the circumstances of each case." 754 P.2d at 78–79. Clearly, the Court of Appeals contemplated a substantial award.[2] Mrs. Martinez asserts that equitable restitution should be based on the discounted value of Dr. Martinez's earnings as a physician over his remaining working life to age 65, less the amount a high school graduate would have earned over the same time. Based on those calculations, Mrs. Martinez values Dr. Martinez's medical education at $1,555,000.[3]

Although the Court of Appeals did not specifically adopt this formula for calculating the amount of equitable restitution, neither did it reject it or refer to any formula by which the amount of equitable restitution could be calculated. In any event, any formula which accomplished that court's purpose would necessarily be inherently and highly speculative. If, for example, a court awarded a lump-sum payment, the award would be based upon a wholly false assumption if the payor spouse's working life were cut short by death, illness, change of profession, or early retirement or if the working life were interrupted for any other reason. Furthermore, whether a court awarded a lump sum or periodic payments, the receiving spouse would be given what is tantamount to a lifetime estate in the paying spouse's earnings that have no necessary relationship to the receiving spouse's actual contribution to the enhanced earning power or to that spouse's needs, however broadly defined.

Third, although the Court of Appeals stated that it rejected the proposition that Dr. Martinez's medical degree should be valued as a property interest and Mrs. Martinez given an interest in it, that court's concept of equitable restitution is essentially indistinguishable.

■ The recipient of an advanced degree obtains that degree on the basis of his or her innate personal talents, capabilities, and acquired skills and knowledge. Such a degree is highly personal to the recipient and has none of the traditional characteristics of property. "It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or

---

**2.** The Court of Appeals stated that on remand the trial court might, for example, extinguish Dr. Martinez's lien on the family home and credit that amount against the overall award of equitable restitution. The court stated that this amount, $17,528, "would probably be only a fraction of the total amount of equitable restitution awarded." 754 P.2d at 79 n. 12.

**3.** Dr. W. Chris Lewis was the expert used by Mrs. Martinez to place a value on the increased "income stream" that Dr. Martinez would have for the remainder of his career. Dr. Lewis had

not previously valued a medical degree or medical practice. He calculated the present value of the lifetime earnings of a healthy 38-year-old currently earning $100,000 per year to be $2,482,500. He then deducted what he thought an average high school graduate would earn over the same period of time, or $926,000, and concluded that the value of Dr. Martinez's "medical education and training" based on his increased earning capacity was $1,555,000. On the basis of that amount, Mrs. Martinez would be awarded a substantial sum.

pledged." *In re Marriage of Graham*, 194 Colo. 429, 432, 574 P.2d 75, 77 (1978). The time has long since passed when a person's personal attributes and talents were thought to be subject to monetary valuation for commercial purposes. In short, we do not recognize a property interest in personal characteristics of another person such as intelligence, skill, judgment, and temperament, however characterized.

The law accepted in other jurisdictions almost unanimously is that professional degrees are not marital property and are not subject to equitable distribution. Of twenty-four jurisdictions that have considered the issue, all but two have held that a professional degree or license is not marital property subject to equitable distribution. *See Archer v. Archer*, 303 Md. 347, 493 A.2d 1074, 1077 (1985); *see also, In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978); *Grosskopf v. Grosskopf*, 677 P.2d 814 (Wyo.1984). *See generally* Annotation, *Spouse's Professional Degree or License as Marital Property for Purposes of Alimony, Support, or Property Settlement*, 4 A.L.R.4th 1294 (1981 & Supp.1990).[4] *See contra O'Brien v. O'Brien*, 114 Misc.2d 233, 452 N.Y.S.2d 801 (N.Y.Sup.Ct.1982), *aff'd as modified*, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985) (holding that a professional degree is a marital asset based on a New York statute unlike Utah's).

■ Mrs. Martinez's contention that the remedies provided by Utah Code Ann. § 30-3-5 are insufficient is without merit. Those remedies are adequate to fashion an appropriate award that meets the standards to be applied in determining awards of alimony. *Paffel v. Paffel*, 732 P.2d 96, 100–01 (Utah 1986); *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985); *English v. English*, 565 P.2d 409, 410 (Utah 1977). An alimony award should be determined by the receiving spouse's earning capacity, financial condition, and needs and by the ability of the other spouse to provide support. *See Jones*, 700 P.2d at 1075.

■ Usually the needs of the spouses are assessed in light of the standard of living they had during marriage. *Gardner v. Gardner*, 748 P.2d 1076, 1081 (Utah 1988); *Jones*, 700 P.2d at 1075. In some circumstances, it may be appropriate to try to equalize the spouses' respective standards of living. *Gardner*, 748 P.2d at 1081; *see also Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985); *Higley v. Higley*, 676 P.2d 379, 381 (Utah 1983). When a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change, unless unrelated to the efforts put forward by the spouses during marriage, should be given some weight in fashioning the support award. *Cf. Savage v. Savage*, 658 P.2d 1201, 1205 (Utah 1983). Thus, if one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, it may be appropriate for the trial court to make a compensating adjustment in dividing the marital property and awarding alimony. *See, e.g., Kerr v. Kerr*, 610 P.2d 1380 (Utah 1980); *Tremayne v. Tremayne*, 116 Utah 483, 211 P.2d 452 (1949).

Here, the trial court found that the parties would have enjoyed a higher family income because of Dr. Martinez's increased income, which was due to some extent to the efforts of both spouses during the marriage. Although Dr. Martinez earned $100,000 a year before the parties divorced, Mrs. Martinez had not enjoyed a higher standard of living as a result of that increased income. The trial court awarded Mrs. Martinez alimony in the amount of $400 per month for a period of five years. That amount was nonterminable for a period of three years even if Mrs. Martinez remarried. The Court of Appeals, relying upon *Jones v. Jones*, 700 P.2d 1072 (Utah 1985), modified that award by increasing it

---

**4.** *See also* Albert, *Dissolution of Marriage When One Spouse Holds A Professional Degree—A Call to Fairness*, 36 Drake L.Rev. 1, 3–9 (1986–87) (explaining why courts should not treat professional degrees as marital property); Comment, *Property Distribution in Domestic Relations Law: A Proposal for Excluding Educational Degrees and Professional Licenses From the Marital Estate*, 11 Hofstra L.Rev. 1327, 1327–29 (1983).

to $750 per month subject to the provisions of Utah Code Ann. § 30–3–5 (1987), which provides for the termination of a permanent alimony award in certain circumstances. That and other modifications made by the Court of Appeals in favor of Mrs. Martinez have not been challenged by either party in this Court.

We granted certiorari solely on the issue of equitable restitution and denied certiorari on all other issues. We therefore express no opinion on the appropriateness of the other modifications made by the Court of Appeals in the divorce decree.

The Court of Appeals' direction to the trial court to devise an award of equitable restitution is reversed, and the case is remanded to the trial court for further proceedings in light of this opinion and the opinion of the Court of Appeals.

HALL, C.J., and HOWE, Associate C.J., concur.

ZIMMERMAN, Justice (concurring and dissenting):

I join Justice Stewart's opinion in its rejection of the equitable restitution doctrine created by the court of appeals. As he states, the trial court has ample power to make alimony and property division awards which will ensure that equity is done to a spouse who is denied an increase in standard of living because a divorce occurs on the threshold of an event that is economically advantageous to the other spouse. There is no reason to create a new and conceptually ill-defined property concept to meet this need.

Justice Durham's dissent deserves some comment. She suggests that we should affirm the court of appeals' adoption of an equitable restitution doctrine because our existing case law on property division and alimony is insufficiently flexible to allow for the fashioning of a remedy for situations of the type presented here. She then suggests that if we are going to rely upon property division and alimony law to deal with these problems, we need to articulate guidelines for the trial courts in dealing with this area.

I disagree with Justice Durham's premise that our cases do not permit the use of alimony and property division to produce a fair result in these cases. It may be that our prior cases have not addressed the issue, but the opinion Justice Stewart has authored today does. The majority specifically states:

When a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change, unless unrelated to the efforts put forward by the spouses during marriage, should be given some weight in fashioning the support award.

At 542.

The majority opinion also makes it clear that the trial court can make such compensating adjustments to both the property division and the alimony award as it deems necessary to make the ultimate decision equitable:

[I]f one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, it may be appropriate for the trial court to make a compensating adjustment in dividing the marital property and awarding alimony.

At 542.

In light of this language, joined in by four members of the court, there can be no doubt that trial judges are empowered and enjoined to take circumstances like those presented here into account in making alimony and property division awards. To the extent that Justice Durham's opinion suggests the contrary, it misstates the law.

As for what appears to be Justice Durham's larger concern—that we have given the trial courts insufficient guidance as to how to make the required adjustments in awards—I agree that over time, we will have to give further shape to the rules governing the division of property and the award of alimony to be sure that both parties in cases like this one are dealt with fairly. However, there seems little need to opt for one theoretical framework now. In this area, law development on a case-by-case basis may be the best approach.

On a separate issue, I dissent from the majority's remand of this matter to the trial court. The court of appeals found that the trial court abused its discretion and attempted to modify the decree to make it sufficiently equitable to pass appellate muster. In doing so, the court of appeals modified the alimony award and the child support award and ordered equitable restitution. We granted certiorari to consider only the equitable restitution portion of that modification of the divorce decree, and we have now said that in making that specific modification, the court of appeals overreached. We have not said that the decree was equitable without some adjustment that would address the problem which motivated the creation of the equitable restitution doctrine. We have only said that the equitable result sought by the court of appeals cannot be achieved that way. In fact, the opinion of Justice Stewart recognizes that the trial court had the power to effect a remedy for the underlying problem.

Under these circumstances, we should remand the matter to the court of appeals for further proceedings. It should be allowed to again address the propriety of the trial court's decree in light of our explication of the law. There is no occasion for us to send this matter back to the trial court. If the court of appeals thinks it needs more information from the trial court, there will be time enough for such a remand.

DURHAM, Justice dissenting:

The majority opinion holds that professional degrees are not marital property and rejects the principle of equitable restitution fashioned by the court of appeals, on the theory that currently recognized rights to alimony, child support, and property distribution are sufficient to solve the complex problems posed by cases like this. I disagree and would argue that if we are going to prohibit the use of the principles relied on by the court of appeals, then we must fashion a new and more flexible theory of alimony.

First, there is insufficient tangible property to compensate the spouse who has been "investing" time, labor, earnings, and postponed improvements in standard of living for the long-term benefit of the marital community when the marriage ends before the investment has "paid off." Second, child support protects the rights of the children of divorcing spouses to share in present and future benefits of earning capacity; it may not legitimately be used to compensate a former spouse for the value of what she has "invested" without return (or lost) as a result of the termination of the marriage. Finally, alimony as currently understood in our law is theoretically inadequate to perform the compensation function that the court of appeals identified as necessary in this case. One need only examine the alimony decisions cited by the majority opinion to ascertain that alimony in this state has depended on (1) the financial conditions and needs of the recipient spouse, (2) the ability of the recipient spouse to produce sufficient income for self-support, and (3) the ability of the payor spouse to provide support. *See, e.g., Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). To those fundamental principles, we have added the consideration that "[a]n alimony award should, in as far as possible, equalize the parties' respective standards of living and maintain them at a level as close as possible to the standard of living enjoyed *during the marriage.*" *Higley v. Higley*, 676 P.2d 379, 381 (Utah 1983) (emphasis added).

I submit that none of the foregoing principles address the specific problem posed by termination of a marriage in which one or both spouses have sacrificed in tangible and intangible ways, foregoing income, accumulation of property, an enhanced standard of living, and the educational and career-development opportunities of one so that the other might acquire a valuable and prestigious professional degree. When the marriage ends before the marital community has enjoyed the benefits expected from that sacrifice, the nonholder of the degree suffers a very real loss. Whether we adopt a doctrine of "equitable restitution" or rethink the theory and function of alimony, we must address the requirements of equity and justice to compensate in some

fashion for that loss. As David S. Dolowitz recently noted in the *Utah Bar Journal,* equitable restitution is a form of alimony "paid to produce an equitable balancing of property and income *that cannot be otherwise effected*" by the traditional forms of support alimony and rehabilitative alimony. Dolowitz, *The Impact of Tax Laws on Divorce,* Utah B.J., at 8, 9 (August/September 1991) (emphasis added).

Other commentators have recently devoted a great deal of scholarly attention to the problems of compensating spouses for losses they suffer because of decisions to further the marital enterprise by enhancing the education or career of one spouse at cost to both.[1] In a recent article discussing the question *Should "The Theory of Alimony" Include Nonfinancial Losses and Motivations?,* 1991 B.Y.U.L.Rev. 259, law professor Ira Ellman (author of *The Theory of Alimony,* 77 Calif.L.Rev. 1 (1989)) observes:

> [T]he purpose of alimony under "The Theory" is to eliminate the financial disincentives for marital sharing behavior that would be present in the absence of a remedy, rather than to provide positive incentives.... The principle is actually rather modest in scope. The policy upon which it is based would seem, at least at first, to be broadly acceptable: spouses otherwise inclined to conduct themselves during the marriage in a manner that benefits the marital community ought not be discouraged from acting that way for fear that, if the marriage were to dissolve, they would be left with all of the financial loss arising from their decision. This is especially true when, for example, the wife has a loss while her husband has no loss, or even reaps a gain (as would be the case where the wife gives up her employment to advance her husband's).

B.Y.U.L.Rev. at 265.

This approach is connected to an assessment of *loss,* not one of need, as has traditionally been the case in the theory of alimony. It requires the courts to discover or create means by which a spouse may recover after divorce the value of what he or she lost by reason of investment in the marital enterprise, where that investment has resulted in a net gain to the other spouse.

> Once the spouses' gain or loss from the marriage has been measured, they can be compared against one another to determine if one spouse has a loss that should be reallocated to the other. Clearly all losses cannot be compensable, for the simple reason that the claim is against the other spouse, and both spouses may have suffered a loss from their marriage. A loss is compensable, in whole or part, only if the other spouse's loss is smaller, or if the other spouse has achieved a gain.

*Id.* at 271. Professor Ellman goes on to describe this as a "reliance measure" of loss, as opposed to the traditional contract damage measure of expectation, and explains its justification at some length. He also suggests several important limitations on his theory of alimony: for example, (1) only residual post-marriage losses are compensable, not inequities in the exchange during marriage; (2) only financial losses are compensable; and (3) only losses arising from marital "sharing behavior" are compensable.

I do not propose that we adopt Professor Ellman's theory wholesale; I only cite it as one example of a thoughtful effort to solve the problems posed by the common circumstances illustrated in this case. My criticism of the majority opinion is that it makes no effort to guide the trial courts in fashioning a realistic remedy for what is a realistic loss. It rejects the effort of the court of appeals to do precisely that and offers no alternative. The legal status quo is unacceptable, in my view, and I hope that the majority will be willing in the future to make good on its representation that the concept of alimony (or property distribution when there is any property) can be accommodated to the need for equi-

1. *See* Batts, *Remedy Refocus: In Search of Equity in "Enhanced Spouse/Other Spouse" Divorces,* 63 N.Y.U. L.Rev. 751 (1988); Shelburn & Chastain, *Career Assets and the Equitable Apportionment of Marital Property,* 38 S.C. L.Rev. 755 (1987).

ty. Unless and until that happens, any woman (or man, for that matter) who sacrifices her own education, earning capacity, or career development so that a spouse may advance and the marriage may prosper as a joint venture will inevitably suffer the full cost of that decision at divorce, while the advantaged spouse will continue to walk away from the marriage with all of the major financial gain. That is unfair, and in this area at least, the responsibility of the law is to seek fairness.