2010 UT 7

**Gloria Hayley ASHBY, Plaintiff and Respondent,**

v.

**Dallen Ben ASHBY, Defendant and Petitioner.**

No. 20080737.

Supreme Court of Utah.

Feb. 9, 2010.

Scott P. Card, Matthew R. Howell, Provo, for plaintiff.

David J. Hunter, Orem, for defendant.

1. 818 P.2d 538 (Utah 1991).

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case is before us on writ of certiorari to the court of appeals and requires us to consider whether a divorcing spouse may bring claims for (1) unjust enrichment based on her support of her spouse's educational efforts and (2) breach of contract based on her promise to support her spouse's education efforts in exchange for the promise of a higher standard of living in the future (a "student support contract"). We determine that a divorcing spouse's claim for unjust enrichment based on support of a student spouse is barred by our rejection of the remedy of equitable restitution in *Martinez v. Martinez*.[1] But we hold that *Martinez* does not bar claims for breach of a student support contract, and that such claims are permissible provided they are brought within the divorce action.

## BACKGROUND

¶ 2 Gloria and Dallen Ashby were married on December 6, 1997, while Dallen was finishing his undergraduate studies at Brigham Young University in preparation for applying to medical school. While Dallen was completing his undergraduate education, Gloria worked as the family's primary financial provider. Gloria contends that, during this time, she and Dallen entered into a binding contract under which she agreed to support him while he attended medical school in exchange for Dallen's promise to support "her at a certain level with the income he would earn as the holder of a medical degree."

¶ 3 After Dallen obtained his undergraduate degree, he was accepted into medical school at the University of St. Louis. Gloria moved with Dallen to St. Louis and claims that this required her to forego a lucrative business opportunity in Utah. Dallen attended medical school in St. Louis from 2000 to 2004. During his time in medical school, Dallen paid for his tuition and books by taking out student loans that he is solely responsible to repay. While Dallen attended

school, Gloria worked as an interior designer, and her income provided for most of the couple's day-to-day living expenses.

¶ 4 Gloria and Dallen separated in May 2005, shortly after Dallen began a one-year medical internship in St. Louis. Gloria filed for divorce on October 11, 2005 in Utah. In addition to a cause of action for divorce, her complaint included a breach of contract claim based on the couple's alleged support agreement.

¶ 5 Gloria's case was initially assigned to the Third District. The district court bifurcated Gloria's claims for divorce and breach of contract. It entered a decree of divorce on April 12, 2006 and reserved the breach of contract claim for trial. Dallen then filed a motion to dismiss Gloria's contract claim. Gloria responded to Dallen's motion and amended her complaint to add a cause of action for unjust enrichment.

¶ 6 Before the district court ruled on the motion to dismiss, the case was transferred to the Fourth District. There, Judge Howard, upon recommendation by Commissioner Patton, dismissed Gloria's contract and unjust enrichment claims for improper joinder. Gloria then refiled her dismissed claims in a separate action, assigned to Judge Hansen. Dallen again brought a motion to dismiss. The district court granted Dallen's motion, ruling that Gloria's contract claim violated the statute of frauds and that her unjust enrichment claim was barred by our holding in *Martinez*.

¶ 7 The court of appeals reversed the district court's dismissals.[2] First, the court of appeals noted that the procedural posture of the case prohibited dismissal based on the statute of frauds.[3] The court reasoned that, since Gloria had not pleaded all the facts necessary to determine that the alleged contract violated the statute of frauds, dismissal on that ground was improper without further discovery.[4] Second, the court distinguished Gloria's claims for breach of contract and unjust enrichment from the equitable restitution claim we rejected in *Martinez*, stating that "*Martinez* only bars self-standing equitable allocations and not claims based on express contract or unjust enrichment."[5]

¶ 8 Dallen petitioned for certiorari review by this court, which we granted to determine whether the court of appeals erred in its assessment of the availability of claims for unjust enrichment and breach of contract in the context of Dallen's motion to dismiss. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶ 9 On certiorari, we review the court of appeals' decision to determine whether the court of appeals correctly reviewed the decision of the district court.[6] A district court should only grant a motion to dismiss when a plaintiff is not entitled to relief either " 'under the facts alleged or under any state of facts they could prove to support their claim.' "[7] Accordingly, when determining whether to grant a defendant's motion to dismiss, a court must assume the truth of the allegations in the pleadings and draw all reasonable inferences from those allegations in favor of the plaintiff.[8]

## ANALYSIS

¶ 10 The parties in this case dispute both the effect of *Martinez* on Gloria's claims and what conditions, if any, should be placed on the enforcement of student support contracts

---

2. See *Ashby v. Ashby*, 2008 UT App 254, ¶ 15, 191 P.3d 35.

3. *Id.* ¶¶ 9–11.

4. *Id.* We note that Dallen has not contested the court of appeals' holding regarding the statute of frauds, apparently on the assumption that it was outside the scope of the question on which we granted certiorari. We believe that the issue does fall within the scope of our grant and take this opportunity to note that the court of appeals' analysis was correct.

5. *Id.* ¶ 14.

6. *Utah State Tax Comm'n v. Stevenson*, 2006 UT 84, ¶ 19, 150 P.3d 521; *Griffith v. Griffith*, 1999 UT 78, ¶ 17, 985 P.2d 255.

7. *Clark v. Deloitte & Touche LLP*, 2001 UT 90, ¶ 14, 34 P.3d 209 (quoting *Prows v. State*, 822 P.2d 764, 766 (Utah 1991)).

8. *Id.* ¶ 2.

between divorcing spouses. We begin by assessing the impact of *Martinez* on Gloria's unjust enrichment and breach of contract claims. We first conclude that the rationale underlying our rejection of equitable restitution in *Martinez* is equally applicable to Gloria's claim for unjust enrichment. We determine, however, that our decision in *Martinez* does not preclude Gloria's contract claim. Because we find that *Martinez* does not bar the enforcement of student support contracts, we next analyze the conditions under which student support contracts may be enforced by divorcing spouses. We conclude that claims for breach of such contracts are permissible, provided that they satisfy the normal conditions imposed on postnuptial contracts and that such claims are brought within the divorce action.

## I. *MARTINEZ* PRECLUDES GLORIA'S CLAIM FOR UNJUST ENRICHMENT BUT DOES NOT BAR HER BREACH OF CONTRACT CLAIM

### A. *Gloria's Unjust Enrichment Claim Is Materially Indistinguishable From a Claim for Equitable Restitution*

¶ 11 Gloria argues that Dallen has been unjustly enriched by her efforts to support him during medical school and that she is, therefore, entitled to be compensated for the value of the benefit she conferred on him. Gloria asserts that her case is distinguishable from *Martinez* because she, in contrast to the plaintiff in *Martinez,* alleges the existence of an actual contract. Although the presence of an actual contract casts Gloria's case in a somewhat different light from *Martinez,* Gloria's claim for unjust enrichment is nonetheless materially indistinguishable from the claim for equitable restitution we rejected in *Martinez.*

¶ 12 *Martinez,* like the present case, arose out of a divorce that occurred shortly after one spouse graduated from medical school.[9] The plaintiff in *Martinez* sought a share in the future increased earnings from her spouse's medical degree.[10] While the court of appeals declined the plaintiff's invitation to treat the medical degree as property subject to division, it nevertheless allowed the plaintiff to recover under a theory of "equitable restitution" based on contributions made to the family during the spouse's educational period.[11]

¶ 13 We reversed the court of appeals, declining to recognize the remedy of equitable restitution because (1) it treated marriage as "a venture akin to a commercial partnership," (2) recovery under the remedy would be "extraordinarily speculative," and (3) equitable restitution was "essentially indistinguishable" from treating an advanced degree as marital property.[12] Although we recognized the equities involved in student support situations, we reasoned that the concept of alimony was broad enough to take the equitable concerns presented in *Martinez* into account. We stated that "if one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, it may be appropriate for the trial court to make a compensating adjustment in dividing the marital property and awarding alimony." [13]

¶ 14 Unjust enrichment "is an action initiated by a plaintiff to recover payment for labor performed in a variety of circumstances in which that plaintiff, for some reason, would not be able to sue on an express contract." [14] A claim for unjust enrichment is an action brought in restitution,[15] and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue. If there were a contract, it, rather than the law of restitution, would govern the parties' rights and determine their

9. *Martinez v. Martinez,* 818 P.2d 538, 539 (Utah 1991).

10. *Id.* at 539–40.

11. *Id.*

12. *Id.* at 540–42.

13. *Id.* at 542.

14. *Davies v. Olson,* 746 P.2d 264, 268 (Utah Ct.App.1987).

15. *See Jeffs v. Stubbs,* 970 P.2d 1234, 1245–46 (Utah 1998).

recovery.[16] "Recovery under [unjust enrichment] presupposes that no enforceable written or oral contract exists."[17]

¶ 15 Accordingly, by the very nature of the cause of action, Gloria's claim for unjust enrichment is predicated on the assumption that there is no enforceable contract between her and Dallen. It is, then, essentially an alternative basis for recovery in the event her contract claim fails. And because Gloria's unjust enrichment claim is premised on the nonexistence of an enforceable contract between her and Dallen, it is, in reality, nothing more than a rewording of the equitable restitution claim we rejected in *Martinez*. Our rationale for rejecting the equitable restitution claim in *Martinez* did not hinge on the fact that the plaintiff had not alleged the existence of an express contract. Accordingly, our reasoning regarding the equitable restitution claim in *Martinez* is equally applicable to Gloria's claim for unjust enrichment in this case. We therefore reverse the court of appeals and uphold the district court's dismissal of Gloria's unjust enrichment claim.

### B. Martinez *Does Not Bar Claims for Breach of a Student Support Contract*

¶ 16 Gloria contends that even if her unjust enrichment claim does not survive *Martinez*, her contract claim should. Since the plaintiff in *Martinez* did not allege the existence of a student support contract with the student spouse, Gloria reasons that our holding in *Martinez* did not speak to whether student support contracts are enforceable. Dallen, in contrast, reads *Martinez* as standing for a broad preclusion of all "claims brought by a divorcing party who seeks a financial award outside the context of alimony."

¶ 17 Gloria's reading of *Martinez* is correct. Our decision in that case dealt only with extracontractual equitable claims. It did not speak to whether student support contracts between divorcing spouses are enforceable. That issue is one of first impression in Utah, and it is to this question we now turn.

### II. WHILE UTAH RECOGNIZES A CLAIM FOR BREACH OF A STUDENT SUPPORT CONTRACT BETWEEN DIVORCING SPOUSES, SUCH A CLAIM MUST BE BROUGHT, AS A MATTER OF POLICY, WITHIN THE DIVORCE ACTION

¶ 18 Dallen argues that, since the alleged contract between him and Gloria involves matters "intrinsic to the marriage relationship," it is unenforceable because it lacks "a written document with all the formalities necessary to bind the parties and memorialize the terms and conditions of the agreement." He also contends that section 30–3–5 of the Utah Code, which provides standards for alimony awards, provides the relief that Gloria seeks and renders separate enforcement of her contract claim both improper and unnecessary. Finally, Dallen asserts that Utah's strong public policy of protecting the institution of marriage, as evidenced by our opinion in *Martinez*, would be undermined if the alleged contract between him and Gloria were enforced.

¶ 19 Gloria responds by asserting that Dallen's distinction between intrinsic and extrinsic postnuptial contracts has no basis in our case law, and that, even if it did, the distinction should not be adopted because it is unworkable in practice. She responds to Dallen's arguments under section 30–3–5 by noting that alimony is an inadequate substitute for relief available by contract because, under contract, a party is entitled to "the benefit of her bargain," which might be "more than she might be able to obtain under alimony." Finally, Gloria disputes Dallen's policy arguments and contends that enforcing specific promises between spouses would protect, rather than undermine, the institution of marriage. We address each of Dal-

---

16. *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo.App. 2003) ("In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract.").

17. *Davies*, 746 P.2d at 268.

len's arguments, and Gloria's responses, in turn.

### A. Contracts Negotiated Between Spouses Are Enforceable So Long as They Are Negotiated in Good Faith and Do Not Unreasonably Constrain the District Court's Equitable and Statutory Duties

¶ 20 Dallen first asks us to draw a distinction between "intrinsic" and "extrinsic" contracts between spouses. According to Dallen, intrinsic spousal contracts are contracts dealing with decisions that are commonplace to a marital relationship, such as deciding how many children to have, which spouse will work, or where to live. Dallen would define extrinsic spousal contracts, in contrast, as contracts between spouses that do not arise from the marriage relationship, but instead have a business purpose, such as spousal partnership or employer-employee agreements. Dallen argues that, while extrinsic spousal contracts can be enforced according to normal contract principles, intrinsic spousal contracts require a writing and more definite terms.

¶ 21 As Gloria correctly notes, Dallen's distinction between intrinsic and extrinsic spousal contracts has no support in our case law. The governing principle in our law is that contracts between spouses are enforceable and "generally subject to ordinary contract principles"[18] so long as they are negotiated "in good faith . . . and do not unreasonably constrain the [divorce] court's equitable and statutory duties."[19] The analytical focus is not on the contract's subject matter, but rather on whether the contract was fairly negotiated and does not result in an outcome so severely one sided that it prevents the district court from fulfilling its equitable obligations.[20] We decline to adopt Dallen's distinction and, instead, adhere to our current rule. Accordingly, the mere fact that the alleged contract between Gloria and Dallen covers matters that are, in Dallen's estimation, "intrinsic" to their marriage bears no weight in our analysis.

### B. Section 30–3–5 Neither Preempts Nor Justifies Refusing to Enforce Gloria's Contract Claim

¶ 22 Dallen next argues that Gloria's contract claim should be dismissed because section 30–3–5 of the Utah Code precludes the need for, and makes inappropriate, alternative civil remedies. Although it is not completely clear, Dallen appears to make two separate arguments under section 30–3–5. First, we construe Dallen's claim that section 30–3–5 "preclud[es] the . . . propriety of alternative civil remedies" as an argument that the statute preempts Gloria's right to seek relief under contract. Second, we read Dallen's statement that section 30–3–5 "preclud[es] the need" for other civil remedies as an argument that, even if Gloria's contract claim is not preempted by section 30–3–5, we should decline to enforce it given the relief already available by statute.

### 1. Section 30–3–5 Does Not Preempt Gloria's Contract Claim

¶ 23 Section 30–3–5(8) provides standards for district courts to employ when determining alimony awards and speaks specifically to the issue of spousal student support. Dallen contends that enforcing student support contracts would "take away from the full meaning and effect of [section 30–3–5]." Gloria responds by pointing out that nothing in section 30–3–5 says that the legislature intended alimony to be the exclusive remedy between divorcing spouses and argues that an alimony award is too speculative and uncertain to serve as an adequate substitute for contractual remedies.

¶ 24 Section 30–3–5 contains two provisions that speak to the consideration of spousal support situations in alimony proceedings. First, subsection 30–3–5(8)(a)(vii) states that the district court shall consider "whether the recipient spouse directly contributed to any

---

**18.** *Beesley v. Harris,* 883 P.2d 1343, 1351 (Utah 1994).

**19.** *Reese v. Reese,* 1999 UT 75, ¶ 25, 984 P.2d 987.

**20.** *See id.* ¶¶ 25–27 (examining whether coercion or unconscionable contract terms warranted setting aside the spousal contract).

increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage."[21] Second, subsection 30-3-5(8)(e) provides as follows:

When a marriage of long duration dissolves on the threshold of a major change in the income of one of the spouses due to the collective efforts of both, that change shall be considered in dividing the marital property and in determining the amount of alimony. If one spouse's earning capacity has been greatly enhanced through the efforts of both spouses during the marriage, the court may make a compensating adjustment in dividing the marital property and awarding alimony.[22]

¶ 25 Determining whether a statutory provision preempts alternative remedies is a question of legislative intent.[23] The mere fact that the legislature may have provided an avenue of relief for a particular injury does not preclude alternative methods of recovery for that same, or a similar, injury absent some evidence that the legislature intended that its statutory remedy be the sole avenue of relief.

¶ 26 We agree with Gloria that there is nothing in the plain language of section 30-3-5 suggesting that the legislature, in directing district court judges to consider student spousal support as part of fashioning an equitable alimony award, intended to restrict spouses to alimony as the sole remedy in student support situations. Rather, the plain language of section 30-3-5 is unambiguous and simply makes clear that one spouse's support of their student spouse's educational efforts is properly considered as a factor in making the alimony determination. It says nothing regarding prohibition of legal remedies predicated on a student support contract. Accordingly, we hold that Gloria's breach of contract claim is not preempted by section 30-3-5.

**2. The Relief Available in Section 30-3-5 Does Not Justify Refusing to Enforce Gloria's Contract Claim**

¶ 27 Dallen next argues that, even if section 30-3-5 does not preempt Gloria's contract claim, it obviates the need for enforcing student support contracts by providing the adequate alternative remedy of alimony. And Dallen contends that the availability of this remedy, coupled with the potentially harmful effect that enforcing student support contracts would have on communication between spouses, justifies declining to enforce Gloria's contract claim.

¶ 28 Dallen's argument is predicated on two assumptions that we find either incorrect or unpersuasive. The first assumption is that Gloria can be made whole, through alimony, from Dallen's alleged breach of contract. This is incorrect. While alimony may provide *a remedy* for the type of injury Gloria alleges, it is not necessarily a *perfect substitute* for the remedies available under contract.

¶ 29 For example, if Gloria were to prevail on her breach of contract claim, she would be entitled to the damages necessary to place her in the same position she would have been in had Dallen tendered performance according to the contract's terms. In other words, she would be entitled to damages based on the alleged contractual bargain—to be supported by Dallen at a standard of living commensurate with the income normally obtained by a holder of a medical degree. In contrast, any relief available through alimony is within the discretion of the district court— both as to the terms of an alimony award as well as the decision to award alimony at all.[24] Thus, even if the court decides that Gloria is entitled to alimony, the amount of any award would be determined by the district court in light of the equities and principles set out in section 30-3-5 rather than the amount nego-

---

21. Utah Code Ann. § 30-3-5(8)(a)(vii) (2007).

22. *Id.* § 30-3-5(8)(e).

23. *Gilger v. Hernandez*, 2000 UT 23, ¶ 9, 997 P.2d 305 ("Determining whether a particular statute preempts other law of inferior standing is essentially a question of legislative intent.").

24. Utah Code Ann. § 30-3-5(1) (2007) ("When a decree of divorce is rendered, the court *may* include in it equitable orders relating to the children, property, debts or obligations, and parties." (emphasis added)).

tiated by contract.[25] And the court's alimony award, unlike the legal relief available by contract, would be subject to modification by the district court under the continuing jurisdiction granted it by section 30-3-5(8)(g).[26]

¶ 30 Dallen's second assumption is that enforcing contracts similar to his alleged contract with Gloria would cause significant harm to the institution of marriage. Dallen's primary concern is that enforcing these contracts would chill communication within marriage for fear that all "pillow talk" and "the general complaint of 'broken promises' ... would be elevated to contract or commercial status" with the attendant risk of liability.

¶ 31 But agreements based solely on "pillow talk" or "general complaint[s] of 'broken promises'" would rarely, if ever, rise to the level of enforceable contracts. In the event one spouse brings a claim for breach of contract against another based solely on these grounds, it would likely be disposed of on summary judgment. Thus, normal contract requirements, not to mention the more stringent standards imposed on postnuptial agreements,[27] are sufficient to substantially allay Dallen's concerns. The mere fact that a spouse might assert an unenforceable contract claim does not justify adopting a bright-line rule that would eliminate a whole class of claims based on legitimate contracts, seriously and deliberately negotiated, simply because of their subject matter.

¶ 32 Accordingly, because alimony does not provide an adequate substitute remedy for suing on an enforceable student support contract, and because we find that normal contract principles substantially mitigate Dallen's concerns about the effect that enforcing such contracts would have on communication between spouses, we decline Dallen's invitation to refuse to enforce student support contracts based on the mere possibility that alimony may be available under section 30-3-5.

## C. Any Existing Claim for Breach of a Student Support Contract Must Be Brought Within the Divorce Action

 ¶ 33 Although we conclude that a divorcing spouse is not prohibited from attempting to enforce a student support contract, we determine that, as a matter of policy, any then-existing claim for breach of a student support contract must be brought within the divorce action. Two considerations guide us to this determination. First, as we have previously noted, postnuptial spousal contracts are enforceable so long as they are negotiated in good faith or do not unreasonably constrain the district court in the performance of its equitable and statutory duties. Thus, a student support contract with terms so unfair as to unreasonably constrain a district court's ability to do equity between divorcing spouses is unenforceable under our well-settled rule. The district court judge who presides over the divorce proceeding, armed with a familiarity of the relationship between the spouses and the equities of the situation, is in the best position to determine whether a student support contract would be unenforceable on this basis.

 ¶ 34 Second, requiring claims for breach of student support contracts to be asserted within the divorce action best serves the interests of judicial economy and is most consistent with the expressed legislative policy regarding spousal student support. Contracts define the legal obligations of the parties, and thus, when enforceable, set the boundaries within which the district court's equitable discretion must operate. Because the legislature has expressly tasked the district courts with consideration of spousal student support,[28] it would be imprudent to empower a district court to grant an alimony award only to have that award later frustrated by a legal determination of contract rights

25. *See id.* § 30-3-5(8) (setting out factors the court must consider in determining an alimony award).

26. *Id.* § 30-3-5(8)(g) ("The court has continuing jurisdiction to make substantive changes and new orders regarding alimony based on a sub-

stantial material change in circumstances not foreseeable at the time of the divorce.").

27. *See Reese,* 1999 UT 75, ¶ 25, 984 P.2d 987.

28. Utah Code Ann. §§ 30-3-5(8)(a)(vii), 30-3-5(8)(a)(iii), 30-3-5(8)(e).

in another action.[29] Therefore, we hold that a divorcing spouse who has a claim for breach of a student support contract must bring the claim within the divorce proceeding itself or it is waived.[30]

¶ 35 Finally, at this time we think it beneficial to offer some direction to district courts addressing breach of student support contract claims arising within the context of divorce proceedings. When presented with such a claim, the district court must first, prior to making any alimony determination or other distribution of marital property, determine whether the contract is enforceable. This requires a court to engage in the normal analysis of enforceability under traditional contract law as well as under the special rules applicable to pre- and postnuptial contracts.

¶ 36 If the court determines that the contract is enforceable, then it should grant the legal remedy afforded by the contract and subsequently determine alimony and distribute the marital property in light of equitable principles and the baseline set by the legal award. If, on the other hand, the court determines the contract is not enforceable, whether for failure to comply with ordinary contract requirements or because it would unreasonably constrain the court's statutory and equitable obligations, the district court should then proceed to determine alimony and property division consistent with its statutory duties and the principles outlined in section 30–3–5. In doing so, it may consider, as equitable factors, the parties' arguments under the contract that proved unenforceable.

## CONCLUSION

¶ 37 Because we determine that Gloria's claim for unjust enrichment is materially indistinguishable from the claim for equitable restitution we rejected in *Martinez*, we re- verse the court of appeals and reinstate the district court's dismissal of Gloria's unjust enrichment claim. However, in light of our determination that Gloria may bring her claim for breach of contract against Dallen in the divorce action, and the fact that she originally brought her claim as part of the divorce action, we affirm the court of appeals' reversal of the district court's dismissal of Gloria's breach of contract claim. The court of appeals stayed the divorce action pending our resolution of this case. While the divorce action is not before us, we recognize that our opinion may require the court of appeals to consolidate this case with the divorce case and then remand the cases to the district court. We leave those determinations to the court of appeals to make in a manner not inconsistent with this opinion.

¶ 38 Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

DURHAM, Chief Justice, concurring:

¶ 39 After this court's decision in *Martinez v. Martinez*, 818 P.2d 538 (Utah 1991), the legislature significantly amended the statutes related to alimony in divorce cases. Subsection 30–3–5(8)(a) (2007) of the Utah Code now provides that a court "shall consider ... the following factors in determining alimony: ... (vii) whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage."

¶ 40 Thus, in keeping with other developments in the understanding of support, *see* American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations §§ 5.04 cmt. b-d, 5.12 (2002), our legislature has acknowledged an

---

29. Although we have in the past cautioned about "'unduly complicat[ing]'" divorce proceedings with other claims between the parties, *see Walther v. Walther*, 709 P.2d 387, 388 (Utah 1985) (quoting *Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983)), the legislature's express mandate that spousal student support be considered in the alimony proceeding mitigates this concern when it comes to student support contract claims.

30. We are not called upon to express, and do not express an opinion as to whether, to be enforceable, a spousal support contract that has not yet been breached must be alleged during the divorce proceedings.

expanded function for alimony as "support plus compensation" in appropriate circumstances. Proper attention to this aspect of alimony as set forth in the statute would, in my view, eliminate or decrease the need for reliance on quasi-contract theories of recovery. Therefore, although I concur with the majority, I would urge trial courts and counsel to consult the statutory basis for recovery in these types of cases.

¶ 41 Justice PARRISH and Justice NEHRING concur in Chief Justice DURHAM's concurring opinion.