**Frank R. GEORGE, dba Frank George & Son Construction, Plaintiff and Respondent,**

v.

**OREN LIMITED & ASSOCIATES, a Utah limited partnership, Defendant and Appellant.**

No. 18359.

Supreme Court of Utah.

Aug. 29, 1983.

Lorin N. Pace, Salt Lake City, for defendant and appellant.

Stephen G. Homer, West Jordan, for plaintiff and respondent.

HALL, Chief Justice:

Plaintiff Frank R. George, dba George & Son Construction, brought this action to recover sums alleged due for services and materials provided in the installation of improvements upon defendant's property, and for a lien against the property so served. Defendant Oren Limited & Associates counterclaimed for damages upon the theory that plaintiff's alleged untimely performance constituted a breach of contract. The trial court entered judgment in plaintiff's favor, awarding him damages in the amount of $58,482.41 and attorney fees of $2,700, and dismissing defendant's counterclaim. Defendant seeks reversal of only the money judgment on this appeal.

In May, 1979, the parties entered into a series of written contracts whereby plaintiff agreed to install improvements (curb and gutter, sidewalks, water and sewage lines, and street paving) within a subdivision located in Farmington, Utah. Inasmuch as these improvements were to eventually become the property of Farmington City (hereinafter "the City"), they were designed and inspected by the City.

To guarantee the completion of the improvements, as well as the entire subdivision project, the City required that defendant, as developer, provide a bond in the amount of $269,500, and that the bond be deposited in an escrow account. Funds in this account were released by the escrow

holder (American Savings) for the purpose of paying construction expenses only upon the written approval of the City.

Plaintiff commenced installation of the improvements in May, 1979. Approximately one month later (June 6, 1979), he submitted his first bill, which was paid promptly by defendant. Thereafter, he continued to bill defendant on a monthly basis and to receive payments from defendant as billed, until October, 1979. The bill submitted by plaintiff in October for the work performed during the month of September was only partially paid. However, plaintiff received assurances at that time from John W. Sullivan, a partner in the defendant partnership, that the balance would definitely be paid. On the basis of Mr. Sullivan's assurances, plaintiff continued his work through the months of October and November. He then presented a bill on November 21, 1979, for the balance due from September and for the additional work performed during October and November. This bill was not paid, although again plaintiff received assurances that funds were forthcoming. Plaintiff did not, however, resume installation thereafter.

In May, 1980, Mr. Sullivan tendered to plaintiff a letter addressed to the Farmington City Council, authorizing the Council to release such funds from the bond (escrow account) as were owed to plaintiff. Upon presentment of this letter to the City, plaintiff was informed that the bond (escrow) had been exhausted. Thereupon, plaintiff filed a notice of lien against the subdivision property in the amount of $42,687.50. On July 15, 1980, he instituted the present action to recover the amount owing and enforce the lien.

At trial, the evidence clearly showed that at the times of plaintiff's execution and performance of the contracts in issue, unbeknownst to defendant or any of its individual partners, plaintiff was not licensed to engage in the business of a contractor. Plaintiff therefore acted in violation of U.C.A., 1953, § 58–23–1.[1]

The evidence further revealed that although plaintiff had been duly licensed as a contractor from 1957 to 1969, he had failed to renew his license, notwithstanding his continued involvement in the business as a contractor, during an eleven-year period between 1969 and 1980. According to plaintiff's testimony, his failure to become licensed during this extended period of time was not attributable to inadvertence or negligent oversight, but rather to willful disregard of the State's licensing requirements. He testified as follows:

Q  Any other reason you didn't license in 1970 or in subsequent years?
A  Yes, there was a reason.
Q  What was that?
A  I didn't like the bureaucracy that dominated that sort of thing.

. . . .

Q  You indicated, Mr. George, you didn't like the bureaucracy. Why didn't you like the bureaucracy of the licensing department?
A  Well, it was my contention they were revenue raising agencies. They are not a regulator. They don't know whether I know what I am doing or not.

Plaintiff became relicensed in June of 1980, at which time his performance under the subject contract had ceased. To obtain this license after approximately eleven years of unlicensed status, he had to demon-

---

1.  Section 58–23–1 provides:
    License required for contracting—Prima facie evidence of contracting.—It shall be unlawful for any person, firm, co-partnership, corporation, association, or other organization, or any combination of any thereof, to engage in the business or act in the capacity of contractor within this state without having a license therefor as herein provided, unless such person, firm, copartnership, corporation, association, or other organization is par-ticularly exempted as provided in this act. Evidence of the securing of any construction or building permit from a governmental agency, or the employment of any person on a construction project, or the offering of any bid to do the work of a contractor as herein defined, shall be accepted in any court of the state of Utah as prima facie evidence of engaging in the business or acting in the capacity of a contractor.

strate his competence anew by taking an examination.

Defendant's sole contention on appeal is that plaintiff's failure to comply with the licensing requirements of U.C.A., 1953, § 58–23–1 precludes his right to recover for materials and services provided under the contract.

The general rule in this jurisdiction with respect to the status of unlicensed contractors has been stated thus:

> If the purpose of licensing is to protect the public, then the general rule in this State is that the party who does not obtain a license, but is required to do so, *cannot obtain relief to enforce the terms of his contract*—including payment thereunder—even though there are other penalties imposed against him expressly by statute including criminal sanctions . . . .
> And there is no doubt that the purpose of the licensing statute relating to contractors, supra [Section 58–23–1], is protection of the public. [Emphasis added.] [2]

This rule is not, however, applied unconditionally. This Court has held that unless it is shown that the party from whom the unlicensed contractor seeks to recover is within the class of persons whom the licensing statute is designed to protect, the rule will not be applied.[3] Thus, the pivotal issue in this case is whether defendant occupied a protected status.

Defendant contends that it was definitely within the protected class and that the general rule, *supra,* should therefore have been invoked by the trial court to relieve defendant of its obligation to plaintiff under the contract. Defendant points out that this Court has only refused to apply the general rule in two cases, *Fillmore Products, Inc. v. Western States Paving, Inc.,*[4] and *Lignell v.*

*Berg,*[5] and that the circumstances upon which the Court's decision rested in those cases are clearly distinguishable from the instant matter.

It is of course plaintiff's position that defendant was not within the class protected under the licensing statute, and thus, should not be afforded the benefits of the general rule. Plaintiff maintains that the two cases noted above (*Fillmore Products* and *Lignell*) are sufficiently similar to the present case to be dispositive hereof.

In the *Fillmore Products* case, the Court considered the following circumstances to be of controlling significance:

> In this case it is clear that an unlicensed subcontractor is dealing with a licensed general or original contractor. And the defendants have not disputed that the entire sewer project was under the supervision of a licensed project engineer, that all of the work had to meet the specifications and requirements of the general contract and that all of the work had to be approved and accepted by the project engineer before any payment was made by the Town of Ferron.[6]

Plaintiff argues that these same circumstances, at least in substance, exist in the instant case. He points out that his work had to meet the specifications of the Farmington City subdivision ordinance and that it was inspected by the City's personnel.

In *Lignell,* while sustaining the general rule, the Court made the following observation with respect to the exception: "A litigant is not a member of that class [protected class] if the required protection (i.e., against inept and financially irresponsible builders) is in fact afforded by another

---

**2.** *Fillmore Products, Inc. v. Western States Paving, Inc.,* Utah, 561 P.2d 687, 689 (1977). *Accord, Heber Valley Truck, Inc. v. Utah Coal & Energy, Inc.,* Utah, 611 P.2d 389 (1980); *Lignell v. Berg,* Utah, 593 P.2d 800 (1979); *Meridian Corp. v. McGlynn/Garmaker Co.,* Utah, 567 P.2d 1110 (1977); *Mosley v. Johnson,* 22 Utah 2d 348, 453 P.2d 149 (1969); *Olsen v. Reese,* 114 Utah 411, 200 P.2d 733 (1948); *Smith v. American Packing & Provision Co.,* 102 Utah 351, 130 P.2d 951 (1942).

**3.** *See Fillmore Products v. Western States Paving* and *Lignell v. Berg, supra* n. 2.

**4.** *Supra* n. 2.

**5.** *Supra* n. 2.

**6.** *Fillmore Products v. Western States Paving, supra* n. 2, at 690.

means."[7] The Court then cited the following circumstances as controlling in its determination that the protections contemplated under the statute were in fact provided through other means:

1. BBC [unlicensed contractor] has not failed to satisfy the licensing authority of its technical competence and financial qualification for license. It had inadvertently permitted its license to lapse. Restoration of licensed status involved no new demonstration of qualification, but only payment of fee.

2. The Owners did not rely on any BBC competence they inferred from BBC's having advertised itself as a general contractor. They had previously employed BBC as a builder in apartment house construction. Moreover, the Owners usurped the general contractor's prerogatives in constructing the Terrace Incline complex. They relied on their own competence.

3. BBC supplied a performance bond as well as a labor and material suppliers payment bond. The Owners were infinitely better assured of adequate and complete performance without financial exposure beyond the contract price than they would have been by BBC's mere compliance with the licensing statute.[8]

Again, plaintiff maintains that in substance, these circumstances are present in the instant case, and that the required protection was provided in this case by the inspections conducted by the City.

To summarize his position on this point and to justify his reliance upon the *Fillmore Products* and *Lignell* decisions, plaintiff quotes the following passage from the memorandum decision issued by the trial court in response to defendant's motion for judgment n.o.v.:

The Court concludes that this case falls within the doctrine enunciated in the *Fillmore Products, Inc. v. Western States Paving Inc.,* 561 P. 2nd 687, i.e., there is a substantial penalty or forfeiture involved if plaintiff is denied recovery; there was never any question that plaintiff was entitled to be licensed, in that he was licensed before and immediately after the subject contract; he was known by the general partner of defendant prior to contracting; and defendant was adequately protected by reason of the fact that the project had to be tested and approved by the Farmington City Engineer.

The record before us reveals that the circumstances in the instant case are distinguishable from those cited, *supra,* as controlling in the *Fillmore Products* and *Lignell* cases. The following circumstances distinguish the present case from *Fillmore Products:* (1) plaintiff was not acting as a subcontractor under the direct supervision of a licensed general or original contractor; (2) the entire project was not under the supervision of a licensed project engineer; (3) plaintiff's work did not have to be approved and inspected by a project engineer before any payment could be made to him—rather, he received payment on a monthly basis as he billed defendant.[9]

We acknowledge the fact urged by plaintiff that the City performed regular inspections upon plaintiff's work. We do not, however, agree that these inspections alone were equal or comparable to the many forms of protection (i.e., against inept and financially irresponsible builders) [10] shown to exist in the *Fillmore Products* and *Lignell* cases. Nor do we agree that such inspections justified plaintiff's willful disregard of the licensing statute. The statute

7. *Lignell v. Berg, supra* n. 2, at 805.

8. *Id.*

9. It is noted that in the instant case the City's project engineer designed the improvements to be installed by plaintiff. The engineer did not, however, inspect the work and does not appear from the record to have had any responsibility, with respect to the project, beyond his design-

ing function. In contrast, the project engineer in the *Fillmore Products* case was a licensed private engineering firm known as Call Engineering, Inc., which did have an inspection responsibility with respect to the construction work.

10. *Supra* n. 7.

places the burden upon the contractor, not the City, to insure the protection of the public. The effect, in this case, as well as in future cases, of conceding to plaintiff's argument (i.e., that an inspection provides all the protection contemplated by the licensing statute) would be to shift the burden of protection to whoever inspects the contractor's work and to relieve the contractor, whose work has been or will be inspected, of his obligation to become licensed. This was certainly not this Court's intent in the *Fillmore Products* and *Lignell* cases, and it is not our intent now. As indicated *supra,* the decision in those cases that defendant was not within the protected class was based upon ample evidence of other adequate forms of protection that compensated for the plaintiff's inadvertent failure to renew a recently expired license; it was not based solely upon a simple routine inspection.

The circumstances that distinguish the instant matter from the *Lignell* case are as follows:

1. Plaintiff did not just "inadvertently" allow his contractor's license to lapse. He rebelled against the bureaucracy and for eleven and one-half years practiced his trade as a contractor without a license, in defiance of both civil and criminal [11] laws. To relicense at the end of this extended period did not merely require payment of a fee, but required testing and examination to demonstrate anew his competence.

2. The defendant's partners relied entirely upon the competence and expertise that plaintiff represented himself as having, and neither had had any professional association with plaintiff prior to the subject contract.

3. Plaintiff did not supply a performance bond, a labor and material supplier's payment bond or any other type of bond to assure adequate and complete performance without financial exposure beyond the contract price.

In light of the foregoing distinctions, plaintiff's reliance upon the *Fillmore Products* and *Lignell* decisions is misplaced. The general rule respecting the status of an unlicensed contractor, although not applied in those two cases, was not abandoned therein. In both cases, this Court sustained the general rule and merely applied an exception thereto.

In further defense of the trial court's decision below to enforce the contract, plaintiff contends that the general rule that contracts entered into by an unlicensed contractor are void and unenforceable, violates the "impairment of contracts" provision of the United States and Utah Constitutions.

Article I, § 18 of the Utah Constitution provides in part: "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall be passed." This provision is patterned after Article I, § 10 of the United States Constitution, which provides: "No state shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts."

Plaintiff argues that the foregoing provision prohibits a legislature from enacting legislation that directly impairs existing contractual obligations. We do not agree. It is well settled that in the exercise of its police power, a state can enact regulations or laws reasonably necessary to secure the health, safety, morals, comfort or general welfare of the community regardless of whether such laws or regulations affect contracts incidentally, directly or indirectly.[12] Furthermore, we are in agreement with the principle that:

> license as herein provided shall be guilty of a misdemeanor.

---

11. The criminal penalty for violating § 58–23–1 is set forth in U.C.A., 1953, § 58–23–18 as follows:

> Acting as contractor without license—Misdemeanor.—Any person, firm, copartnership, corporation, association, or other organization, acting in the capacity of contractor within the meaning of this act, without a

12. 16A C.J.S. Constitutional Law § 353 (1956). *See also Adolph Coors Co. v. Oklahoma Alcoholic Beverage Control Bd.,* Okl., 584 P.2d 717 (1978); *Crane Towing, Inc. v. Gorton,* 89 Wash.2d 161, 570 P.2d 428 (1977).

The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract.[13]

The licensing statute at issue here was clearly enacted for the purpose of *protecting the public* "against inept and financially irresponsible builders." However, the question as to whether its enactment was a proper exercise of the state's police power is not before us and will therefore not be addressed.

Plaintiff further contends that the "impairment of contracts" clause prohibits this Court from interpreting a statute in such a way as to impair contractual obligations. He therefore suggests that the line of decisions (*viz., Smith v. American Packing Co., Olsen v. Reese, Mosley v. Johnson,* and *Meridian ·Corporation v. McGlynn/Garmaker Co.*)[14] that has applied the general rule has done so in violation of the impairment clause and should be reconsidered. This argument has no merit.

The "impairment of contracts" clause has no application to the case at hand for two reasons. The first is that this provision protects only those contractual obligations already in existence at the time the disputed legislation is passed. Where, as in this case, the statute that impairs the contractual obligation exists prior to the execution of the contract, the impairment clause has no application or effect.[15] The second reason is:

> [I]t is now definitely and authoritatively settled that such prohibition[s] in federal and state constitutions *relate to legislative action and not to judicial decisions.* Thus, they do not apply to the decision of a state court, where such decision does not expressly, or by necessary implication, give effect to a *subsequent law* of the state whereby the obligation of the contract is impaired. [Emphasis added.][16]

At issue in the instant case is the propriety of a "judicial decision" interpreting a statute already in existence at the time of the disputed contract's execution. Therefore, the impairment of contracts clause has no application.

Reversed and remanded for the purpose of entry of judgment of dismissal of plaintiff's complaint.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, J., dissents.

---

13. *Layton v. Pan Am. Petroleum Corp.,* Okl., 383 P.2d 624, 627 (1963).

14. *Supra* n. 2.

15. *See Long Sault Development v. Call,* 242 U.S. 272, 37 S.Ct. 79, 61 L.Ed. 294 (1916); *Weber v. Rogan,* 188 U.S. 10, 23 S.Ct. 263, 47 L.Ed. 363 (1903); *Estate of Baker,* 222 Kan. 127, 563 P.2d 431 (1977); U.S. Const. art. I, § 10, cl. 1.

16. *Peevyhouse v. Garland Coal & Mining Co.,* Okl., 382·P.2d 109, 119 (1962). *See also Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Fenton v. Peery Land & Livestock Co.,* 3 Utah 2d 156, 280 P.2d 452 (1955).