**2019 UT App 124**

## THE UTAH COURT OF APPEALS

AGTC INC. AND ALPINE COAL CO. INC.,
Appellants,
*v.*
COBON ENERGY LLC,
Appellee.

Opinion
No. 20170992-CA
Filed July 18, 2019

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 060402937

E. Scott Savage and Stephen R. Waldron, Attorneys
for Appellants

Wm. Kelly Nash, Douglas B. Thayer, Kimberly N.
Baum, and Troy L. Booher, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      AGTC Inc. and Alpine Coal Co. Inc. (collectively, A&A) appeal the district court's grant of summary judgment to CoBon Energy LLC (CoBon) on their contract and unjust enrichment claims. We reverse and remand for further proceedings.

BACKGROUND[1]

¶2    To pursue certain tax credits related to the manufacture of synthetic fuels from coal (synfuel), Covol Technologies Inc. (Covol) and Intermountain Consumer Professional Engineers (ICPE) partnered to form CoBon. ICPE's principals included Steven Nash, Robert Nash, and Anton Tonc, each licensed professional engineers. Using technology developed by Covol, with assistance from ICPE, CoBon planned to develop facilities that would take small and unmarketable pieces of coal known as coal fines—a waste product of coal manufacturing—and bind them together to form marketable coal briquettes.[2]

¶3    After establishing a synfuel production facility, CoBon envisioned selling that facility to a buyer who would make and sell synfuel briquettes. This production would entitle the buyer to claim the associated tax credits. As part of the facility transaction, CoBon would receive a share of the tax credits from the buyer in addition to certain royalty and proprietary technology fees. Before any of this could happen, however, CoBon needed to identify sources of coal fines, find suitable locations for facilities, and negotiate the purchase of coal fines and sale of coal briquettes. But neither Covol nor ICPE had coal industry experience or contacts.

¶4    In November 1995, CoBon contacted A&A and requested its assistance in presenting projects to coal companies and getting facility projects under contract. Mark Rodak, a consultant

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 2 n.4, 406 P.3d 1134 (quotation simplified).

2. This process is typically referred to as "coal fines agglomeration."

and the principal of Alpine Coal, had significant mining engineering education and training as well as experience in various roles in the mining industry. Richard Visovsky, a consultant and the principal of AGTC, also had significant mining engineering training and education and had experience in synfuel development. Neither of these individuals was a licensed professional engineer.

¶5     In March 1996, A&A entered into a consulting agreement with Covol—the company licensing the coal fines bonding technology. Four months later, Covol terminated the consulting agreement with A&A and renegotiated its relationship with CoBon. Under the new arrangement, Covol agreed to license its coal fines bonding technology to CoBon who, using that license, could pursue development of its own synfuel facilities. Additionally, ICPE was removed as a principal of CoBon and replaced by Steven Nash and Robert Nash. In anticipation of receiving its license from Covol, CoBon entered into its own agreement with A&A, first orally and then in a formal written agreement (the Consulting Agreement).

¶6     Over several years, A&A provided consulting and assistance to CoBon in its endeavor to establish synfuel facilities. A&A communicated with coal companies and vendors on CoBon's behalf. A&A brought in several potential project hosts and worked toward the goal of securing synfuel development projects. Ultimately, A&A devoted approximately 6,000 hours consulting for CoBon, which resulted in the completion of several synfuel projects generating approximately $69 million in tax credit payments and other revenue to CoBon.

¶7     CoBon began paying A&A for its assistance under the Consulting Agreement in 2001 but stopped making payments the following year. In response to A&A's demand to continue payments, CoBon filed a lawsuit in a Utah district court, alleging, among other things, that A&A breached the Consulting Agreement. In response, A&A asserted several counterclaims, including claims for breach of contract and unjust enrichment against CoBon. In 2009, CoBon amended its reply to A&A's

counterclaims to argue that A&A was barred from asserting its contract claims by Utah's "non-recovery rule," which bars unlicensed professionals from seeking enforcement of contracts for professional services where the licensing requirements have been enacted with the purpose of protecting the public. *See George v. Oren Ltd. & Assocs.*, 672 P.2d 732, 735 (Utah 1983).

¶8    In 2016, CoBon moved for partial summary judgment on A&A's unjust enrichment claim. CoBon asserted that because both parties had previously admitted that the Consulting Agreement was a binding and enforceable contract, A&A could not pursue its unjust enrichment claim. *See Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246 ("[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."). A&A opposed the motion on the ground that several of CoBon's "contentions and defenses," including its contention that A&A was barred from recovering under the Consulting Agreement by the non-recovery rule,[3] "go to the validity, enforceability and scope of the Consulting Agreement." Because CoBon's defenses had not been abandoned or rejected, A&A argued that dismissing its equitable claims "would be premature and prejudicial." The district court disagreed and dismissed A&A's unjust enrichment claim on the ground that the parties had previously acknowledged the validity of the contract.

---

3. As discussed *infra* ¶¶ 19–23, the district court expressed no opinion regarding whether a party barred from enforcing a contract under the non-recovery rule could maintain a cause of action under an equitable theory of unjust enrichment. While we ultimately need not reach this question, we are inclined to agree with CoBon that such a result would be inconsistent with the public policy behind the non-recovery rule. Further, a determination that a party is barred from enforcing a contract is different from a determination that the contract itself is unenforceable.

¶9    One month before a scheduled trial on the remaining issues, CoBon and A&A each moved for summary judgment regarding CoBon's assertion that the Consulting Agreement was an unenforceable engineering services contract under the non-recovery rule. After briefing and argument on the motions, the court first concluded that the Consulting Agreement was ambiguous regarding "whether the parties intended A&A to provide engineering services." As a result of that determination, the court considered extrinsic evidence of the parties' intent, ultimately concluding that a number of A&A's tasks agreed to in the Consulting Agreement "required the application of engineering training and experience uniquely possessed by A&A." It therefore concluded that the Consulting Agreement was a contract for engineering services and that A&A was barred from recovering under the contract because Rodak and Visovsky were not licensed professional engineers. Accordingly, the district court granted CoBon's motion for summary judgment and denied A&A's. A&A now appeals.

ISSUES AND STANDARD OF REVIEW

¶10    A&A asserts that the district court erred in granting summary judgment in favor of CoBon on A&A's contract and unjust enrichment claims. With respect to the contract claims, A&A asserts that the district court erred in determining that the Consulting Agreement was ambiguous, that it was intended to be an engineering services contract, and that A&A could not enforce the contract due to its lack of licensing.[4] With respect to the unjust enrichment claim, A&A argues that dismissal was premature because the court had not yet disposed of CoBon's

---

4. Because we agree with A&A that its lack of licensing did not affect its ability to enforce the contract under the facts of this case and reverse the district court's summary judgment ruling on that basis, we do not address A&A's other arguments regarding the contract claim.

various claims regarding the enforceability of the contract. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "We review the trial court's grant of summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26, ¶ 8, 414 P.3d 1099 (quotation simplified).

ANALYSIS

I. Contract Claims

¶11 A&A first argues that the district court erred in interpreting the "non-recovery rule" to preclude A&A from enforcing the Consulting Agreement. Assuming, without deciding, that the Consulting Agreement is a contract for engineering services,[5] we agree with A&A that CoBon cannot

---

5. The "practice of engineering" in Utah encompasses a broad array of activity, including any

> service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to the service or creative work as consultation, investigation, evaluation, planning, design, and design coordination of engineering works and systems, planning the use of land and water, facility programming, performing engineering surveys and studies, and the review of construction for the purpose of monitoring compliance with drawings and specifications; any of which embraces these

(continued…)

invoke the non-recovery rule under the circumstances of this case.

¶12    The Utah Code requires that anyone working as a professional engineer first obtain a license. Utah Code Ann. § 58-22-301(1) (LexisNexis 2016) ("A license is required to engage in the practice of professional engineering . . . ."). The general purpose of legislation requiring professional engineers to be licensed "is to provide for the qualification, registration and licensing of persons who hold themselves out to the public as having qualifications in specialized areas which affect the public health, safety or welfare." *Cannon v. Gardner*, 611 P.2d 1207, 1210 (Utah 1980). For this reason, the non-recovery rule generally precludes an unlicensed engineer from enforcing a contract for professional engineering services.[6] *See George v. Oren Ltd.*

---

(…continued)

> services or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, projects, and industrial or consumer products or equipment of a mechanical, electrical, hydraulic, pneumatic, or thermal nature, and including other professional services as may be necessary to the planning, progress, and completion of any engineering services.

Utah Code Ann. § 58-22-102(9)(a) (LexisNexis Supp. 2018).

6. This rule was previously codified with respect to both contractors, *see* Utah Code Ann. § 58-55-604 (LexisNexis 2016), and engineers, *see id.* § 58-22-20 (Allen Smith 1955); *id.* § 58-22-11 (Michie 1986) (provision renumbered). However, while the non-recovery rule remains codified with respect to contractors, the Utah Legislature repealed the engineering provision in 1992 when it enacted a new Professional Engineers and Land Surveyors Licensing Act. *See* Professional Eng'rs & Land Surveyors Licensing Act, ch. 183, § 11, 1992 Utah Laws 697, 701.

(continued…)

*& Assocs.*, 672 P.2d 732, 735 (Utah 1983) ("If the purpose of licensing is to protect the public, then the general rule in this State is that the party who does not obtain a license, but is required to do so, cannot obtain relief to enforce the terms of his contract—including payment thereunder . . . ." (quotation simplified)); *accord Pacific Chromalox Div. v. Irey*, 787 P.2d 1319, 1325 (Utah Ct. App. 1990).

¶13 Nevertheless, the non-recovery rule is "not applied unconditionally, but only under circumstances in which the party from whom the contractor seeks to recover is in the class the legislature intended to protect." *Pacific Chromalox*, 787 P.2d at 1326 (quotation simplified); *see also George*, 672 P.2d at 735. "Laws intended for protecting the public are not intended to become an unwarranted shield for the avoidance of a just obligation and should not allow a [party] to take the benefit of an unlicensed plaintiff's labor and refuse to pay for it." *Pacific Chromalox*, 787 P.2d at 1326 (quotation simplified). Therefore, "unless it is shown that the party from whom the unlicensed contractor seeks to recover is within the class of persons whom the licensing statute is designed to protect, the rule will not be applied." *George*, 672 P.2d at 735. "Thus, the pivotal issue in this case is whether [CoBon] occupied a protected status." *See id.*

¶14 One class of individuals that has been explicitly prohibited from benefiting from the non-recovery rule is those "licensed in the same trade or profession as the unlicensed practitioner." *Pacific Chromalox*, 787 P.2d at 1326 ("A litigant is not a member of the class the legislature intended to protect if the required protection is in fact afforded by another means,

---

(…continued)
The non-recovery rule with respect to engineers is now entirely a creation of common law. In their briefs, neither party contests the existence of a common-law non-recovery rule for engineers, and neither party takes the position that the 1992 repeal of the engineering statute affected the viability of the rule.

such as the litigant being licensed in the same trade or profession as the unlicensed practitioner." (quotation simplified)); *see also Fillmore Products, Inc. v. Western States Paving, Inc.*, 561 P.2d 687, 690 (Utah 1977). Such individuals are not in the same class as the "lay public" that the non-recovery rule is intended to protect, because they are "presumed to possess expertise" in the relevant field that enables them to protect themselves. *See Pacific Chromalox*, 787 P.2d at 1326; *see also Fillmore*, 561 P.2d at 690 (explaining that a licensed contractor has "expertise in the contracting business and is therefore informed of the necessity for licensing therein and the purpose behind licensing, viz., the protection of the public").

¶15 At the time the parties entered into the Consulting Agreement, Steven and Robert Nash were the principals of CoBon. Both Nashes were licensed professional engineers. Along with ICPE, including Anton Tonc, who was also a licensed professional engineer, the Nashes assisted Covol in developing its proprietary coal fines bonding technology. Moreover, the Consulting Agreement obligated A&A to "perform services on behalf of CoBon in accordance with the express directives and authorizations of, and subject to the approval of, CoBon." In other words, A&A's efforts were subject to the supervision and approval of the Nashes—two licensed professional engineers. *Cf. Fillmore*, 561 P.2d at 690 (declining to apply the non-recovery rule where "the entire sewer project was under the supervision of a licensed project engineer, . . . all of the work had to meet the specifications and requirements of the general contract and . . . all of the work had to be approved and accepted by the project engineer before any payment was made"). Led by licensed engineers, CoBon possessed inherent protection against any possible fraud or incompetence resulting from unlicensed consultants performing the work of licensed professionals.

¶16 CoBon attempts to distinguish its situation from the general rule that licensed individuals cannot benefit from the non-recovery rule by pointing out that CoBon's principals were licensed electrical and mechanical engineers rather than licensed

mining engineers and asserts that CoBon was therefore not engaged in the "same trade or profession" as A&A. *See Pacific Chromalox*, 787 P.2d at 1326. But in light of the reasoning for the exception to the non-recovery rule, we are convinced that this phrase should be interpreted broadly such that professional engineers of any type may be classified within the same trade or profession. The overarching consideration is not whether the party from whom the unlicensed contractor seeks to recover has the exact same technical knowledge and expertise as that expected of the contractor, but whether that party "is within the class of persons whom the licensing statute is designed to protect," *see George*, 672 P.2d at 735, that is, the "lay public," *see Pacific Chromalox*, 787 P.2d at 1326. Given the "harshness of declaring contracts of non-licensees void or unenforceable," *see Fillmore*, 561 P.2d at 689, a licensed professional engineer's awareness "of the necessity for licensing . . . and the purpose behind licensing," *see id.* at 690, is sufficient to take the licensed professional engineer out of "the class of persons whom the licensing statute is designed to protect," *see George*, 672 P.2d at 735.

¶17    It is clear from CoBon's business plan for the projects that it was aware that Rodak and Visovsky were not professional engineers. Under the heading "Management Team," the business plan states, "The key CoBon management and consulting team consists of four individuals. Their backgrounds consist of marketing, corporate development financial, engineering and design, construction and construction management and operation and maintenance experience. CoBon believes this team provides a solid management background and furthers the probability of the Project's success." The business plan then goes on to outline the respective qualifications and responsibilities of Rodak, Visovsky, and the Nashes. Steven and Robert Nash are identified as professional engineers by the shorthand "P.E." following their names and are identified as being licensed in eight and fifteen states, respectively. On the other hand, the document is silent as to any licensing acquired by Rodak and Visovsky, instead listing their experience and

education. It is apparent from this document that CoBon was aware that Rodak and Visovsky were not professional engineers, yet CoBon was nevertheless confident in their ability to fulfill the objectives of their employment. *Cf. Kennoy v. Graves*, 300 S.W.2d 568, 570 (Ky. 1957) (refusing to apply the non-recovery rule where a licensed engineer "was in a position to know, and did know, the qualifications of" the unlicensed engineer). Although clearly understanding the relevance of licensing, CoBon elected to enlist A&A's consulting services in the absence of such licensing. Under these circumstances, "[n]o public policy would be served by allowing [CoBon] to invoke" the non-recovery rule. *See Loader v. Scott Constr. Corp.*, 681 P.2d 1227, 1229 (Utah 1984). Rather, it would permit CoBon "to take the benefit of an unlicensed plaintiff's labor and refuse to pay for it." *Pacific Chromalox*, 787 P.2d at 1326 (quotation simplified).

¶18　Because CoBon does not fall in the class of individuals permitted to invoke the non-recovery rule against an unlicensed engineer, A&A is not barred from recovering under the contract. The district court therefore erred in granting summary judgment to CoBon on this basis.

## II. Unjust Enrichment Claim

¶19　A&A also argues that the district court erred in granting summary judgment to CoBon on A&A's unjust enrichment claim. Unjust enrichment "is designed to provide an equitable remedy where one does not exist at law." *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234. Therefore, "if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment." *Id.*

¶20　In opposing CoBon's motion for summary judgment on the unjust enrichment claim, A&A pointed to a number of arguments asserted by CoBon that A&A claimed "go to the validity, enforceability and scope of the Consulting Agreement."

CoBon contested A&A's assertion that these arguments concerned the enforceability of the contract, representing that CoBon's arguments instead focused on questions of contract interpretation, breach of contract, and the parties' relative duties under the contract.

¶21    In ruling on the motion, the district court did not examine whether the remaining claims actually concerned the enforceability of the contract. Nevertheless, the court concluded that the Consulting Agreement is a valid contract as a matter of law because both parties had previously acknowledged "that the contract had been negotiated and signed by both [parties]." Based on this conclusion, the court determined that A&A could not maintain a cause of action for unjust enrichment.

¶22    "Because a claim should be dismissed only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim, a district court should not dismiss alternative equitable claims if the existence or applicability of a contract remain in dispute." *Northgate Village Dev., LC v. Orem City*, 2014 UT App 86, ¶ 50, 325 P.3d 123 (quotation simplified). The fact that the parties acknowledged and agreed that a contract existed between them does not necessarily lead to the conclusion that it was an enforceable contract that effectively governed their rights and obligations with respect to the subject matter of the case. *See Selvig v. Blockbuster Enters., LC*, 2011 UT 39, ¶ 30, 266 P.3d 691 ("Where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." (quotation simplified)); *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246 ("[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue.").

¶23    Because the district court made no determination regarding whether A&A's remaining claims and defenses dealt with the enforceability of the Consulting Agreement, we are concerned that its ruling left the door open to such claims at trial

while foreclosing A&A's ability to pursue an equitable remedy if the court were ultimately to determine that the Consulting Agreement is unenforceable.[7] Thus, the district court prematurely dismissed A&A's unjust enrichment claim while questions regarding the validity of the contract remained unresolved.

CONCLUSION

¶24    Because CoBon does not fall into the class of individuals the non-recovery rule was intended to protect, the rule does not preclude A&A from pursuing its contract claims, regardless of whether the contract is construed as a contract for professional engineering services. Further, because the district court made no determination regarding whether claims and defenses at issue implicated the enforceability of the contract, its grant of summary judgment to CoBon on A&A's unjust enrichment claim was premature. Accordingly, we reverse the district court's summary judgment rulings and remand for further proceedings.

─────────────

─────────────

7. For example, A&A asserted that one of CoBon's defenses "could result in the Court deciding there was no meeting of the minds as to the contract's essential terms," rendering the contract unenforceable. *See Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 13, 374 P.3d 1064 ("Under the principles of basic contract law, a contract is not formed unless there is a meeting of the minds." (quotation simplified)). If A&A is correct in its characterization of CoBon's defense, and if the court ultimately found that there was no meeting of the minds, then the court's summary judgment ruling would leave A&A without either a legal or an equitable remedy.