**2022 UT App 62**

# THE UTAH COURT OF APPEALS

SARA MARIE WARD,
Appellant,
*v.*
MEREDITH DWIGHT MCGARRY,
Appellee.

Opinion
No. 20200724-CA
Filed May 12, 2022

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 200900387

Troy L. Booher, Beth E. Kennedy, Taylor Webb, and
Kyle Adams, Attorneys for Appellant

Christopher M. Von Maack and Kennedy D. Nate,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Sara Marie Ward appeals the district court's grant of
Meredith Dwight McGarry's motion to dismiss her breach of
contract, promissory estoppel, and tort claims against him. We
affirm.

## BACKGROUND

¶2    The parties were involved in a romantic relationship for
approximately two-and-a-half years. During that time, the parties

had one child together. While they were romantically involved, Ward sent nude photos of herself to McGarry.

¶3      After they ended their relationship, the parties became involved in a custody dispute over their child. *See generally Ward v. McGarry*, 2021 UT App 51, 491 P.3d 970. Ward sent McGarry a text requesting that he delete the nude photos of her and promised that if he did, she would not use those photos in their custody dispute. McGarry agreed.

¶4      Several years after they separated, Ward received a call from McGarry's ex-wife, who informed her that she and her son had seen the photos of Ward. According to the ex-wife, McGarry "had given his phone to his son to play with and the child brought the phone home and showed the photos to his mother." The ex-wife sent Ward one of the photos as proof.

¶5      In response to this disclosure, Ward filed a complaint against McGarry, alleging causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, equitable estoppel, punitive damages, negligent misrepresentation, and fraud.[1] McGarry filed a motion to dismiss, asserting (1) that "Ward's tort claims are barred by operation of the economic loss rule"; (2) that her "breach of contract claim fails for want of damages"; (3) that she could not assert her "equitable estoppel claim . . . as an independent cause of action"; and (4) that she could not bring a "punitive damages claim . . . as an independent cause of action."

¶6      The district court agreed with McGarry and dismissed Ward's complaint. Ward now appeals.

---

1. The court rejected Ward's fraud claims on statute of limitations grounds, and she does not challenge that ruling on appeal.

ISSUE AND STANDARD OF REVIEW

¶7 Ward argues that the district court erred in dismissing her breach of contract, promissory estoppel, tort, and punitive damages claims. "The decision to grant a motion to dismiss presents a question of law that we review for correctness." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 12, 221 P.3d 234 (quotation simplified).

ANALYSIS

I. Breach of Contract

¶8 Ward first asserts that the district court erred by "dismissing the breach of contract claim on the ground that the contract did not contemplate emotional distress damages."

¶9 "Normally there is no recovery of damages for mental anguish stemming from a breach of contract." *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 28, 424 P.3d 897 (quotation simplified). However, our supreme court has recognized an exception to this rule when "emotional distress or mental anguish arising from a breach of contract . . . were both a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties at the time the contract was entered into." *Cabaness v. Thomas*, 2010 UT 23, ¶ 75, 232 P.3d 486.[2] To invoke this exception, a plaintiff must point to "specific language" and "obligations" in the contract that show that at the time the parties formed the

---

2. Although the *Kranendonk* court clarified and disavowed portions of *Cabaness*, *see Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶¶ 29 n.28, 31 n.35, 424 P.3d 897, it also relied on the analysis in *Cabaness*, *see id.* ¶¶ 29–32. Thus, *Cabaness* has at least some continued utility in analyzing claims for emotional distress damages in contract cases, and we find it useful here.

contract, they contemplated that emotional distress damages might flow from a breach of the contract. *See Kranendonk*, 2018 UT 36, ¶ 29. In other words, they must show that "the parties contemplated granting relief for more than the typical mental anguish and discouragement that results from a breach of contract." *Id.* ¶ 30.

¶10 The district court concluded that the first element needed to prove the availability of emotional damages—foreseeability—was met in this case due to the agreement's "personal nature." *See id.* ¶ 33 (explaining that "emotional distress damages are a foreseeable result of a breach" of contract when "the contract involved some peculiarly personal subject matter" (quotation simplified)). However, it determined that Ward could not establish the second element—that emotional damages were explicitly within the contemplation of the parties—because there was no "specific language" in the parties' contract contemplating emotional damages for any breach. We agree.

¶11 The language of the employment contract at issue in *Cabaness* stated that the employer would "not tolerate verbal or physical conduct by any employee which harasses, disrupts, or interferes with another's work performance or which creates an intimidating, offensive, or hostile work environment." 2010 UT 23, ¶ 76 (quotation simplified). The *Cabaness* court held that because this language was "specifically directed toward matters of mental concern and solicitude," whether the language demonstrated "that emotional damages were within the contemplation of the parties at the time the contract was entered" was a question of fact that could not be resolved on summary judgment. *Id.*; *see also Kranendonk*, 2018 UT 36, ¶ 31 n.35 (reiterating that the language at issue in *Cabaness* merely created a question of fact as to what the parties contemplated and was not sufficient to illustrate that "the parties expressly contemplated emotional distress damages"). In *Kranendonk*, on the other hand, the language of a contract for legal services included a promise

that the plaintiff's attorney would use "best efforts to obtain a settlement or judgment for [her] through negotiation or other legal action." 2018 UT 36, ¶ 35 (quotation simplified). The court declined to read into that language a commitment to "mak[e] sure the client has peace of mind" and concluded that the contract dealt with solely pecuniary interests. *Id.*

¶12 The exact language of the text messages between the parties in this case is not in the record. However, Ward alleged that she "requested . . . that [McGarry] delete all intimate photos" in exchange for Ward not using the photos in their custody dispute. McGarry agreed.[3] While this contract was of a more personal nature than the one at issue in *Kranendonk*—as demonstrated by the district court's acknowledgement that Ward and McGarry's contract involved personal interests—"the specific language of the contract does not show that emotional distress damages were explicitly contemplated by the parties." *See id.* And unlike the contract in *Cabaness*, which included language prohibiting harassing, intimidating, and offensive behavior—actions "specifically directed toward matters of mental concern and solicitude," *see* 2010 UT 23, ¶ 76—the language of the contract here states only that McGarry agreed to delete the nude photos in exchange for Ward's agreement not to use the photos in their custody dispute.[4] Without "any language related to mental or

---

3. Although the text messages are not in the record, the parties agree that the allegations in the complaint accurately reflect their contents.

4. While McGarry's failure to delete the nude photos could understandably cause an emotional response in Ward, it is not an action that is innately targeted at triggering such an emotional response like harassing, intimidating, and offensive behavior is. *See Intimidate*, Merriam-Webster https://www.merriam-webster.com/dictionary/intimidate [https://perma.cc/X3Q8-EBRU] (definin
(continued…)

emotional harm," *see Kranendonk*, 2018 UT 36, ¶ 35, this is not enough to create even a factual issue regarding what the language contemplated.

¶13 Ward asserts that because "the subject matter of the contract—nude photos—involves peculiarly personal interests, as opposed to rights stemming from monetary interests[,] . . . any breach would necessarily result in emotional distress and mental anguish." However, this argument goes to the foreseeability of the emotional distress damages, not the question of whether the specific language of the parties' agreement contemplated emotional damages. Ward also asserts that we should construe the contract as contemplating emotional damages because "[t]here was no financial component to the agreement" and "[t]he primary damages that could and would arise from . . . [a breach] were noneconomic." But this argument goes to the *nature* of the contract, not its *language*. And *Kranendonk* makes clear that we must consider both the "nature *and* language of the contract" and that our "focus . . . on the contract language" must "consider only those expectations that are apparent from the language of the contract." *Id.* ¶ 29 & n.28 (quotation simplified) (emphasis added). In other words, even though we are sympathetic to Ward's argument that McGarry's failure to delete the nude photos would likely lead to her emotional distress and that emotional distress is the most likely type of damage that the parties could have reasonably expected for a breach of this contract, our supreme court has determined that emotional damages for breach of a contract will be awarded only when those damages were

g "intimidate" as "to make timid or fearful: frighten"); *id. Harass*, https://www.merriam-webster.com/dictionary/harass [https://perma.cc/PZ96-J6K5] (defining "harass" as "to annoy persistently"; "to create an unpleasant or hostile situation"); *id. Offensive*, https://www.merriam-webster.com/dictionary/offensive [https://perma.cc/5ZWP-P7AG] (defining "offensive" as "giving painful or unpleasant sensations"; "causing displeasure or resentment").

explicitly contemplated by the parties based on the contract's language. And here, because Ward cannot point to specific language or obligations in her contract with McGarry that show that emotional damages were contemplated by them at the time they formed the contract, Ward is precluded from recovering emotional damages as compensation for McGarry's breach.

## II. Promissory Estoppel

¶14 Ward next challenges the district court's conclusion that promissory estoppel is not available "where a legal remedy such as breach of contract is available." Ward asserts that the court's determination that she could not recover damages on her breach of contract claim meant that a legal remedy for breach of contract was not available and that promissory estoppel could therefore apply. But just because Ward could not demonstrate that she had suffered damages recoverable under the contract does not mean that no remedy for breach of contract was available. "Even if a contract does not provide an express remedy . . . it does not follow that a party has no legal remedies flowing from a breach of an express contract [or] . . . that equitable remedies should then somehow come into play." *Thatcher v. Lang*, 2020 UT App 38, ¶ 41, 462 P.3d 397 (holding that where it was undisputed that the contract at issue both governed the subject matter of the litigation and was enforceable, an unjust enrichment claim was not available).

¶15 Promissory estoppel "arises in instances where no formal contract exists." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 18, 158 P.3d 1088. Where there is "an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue," equitable remedies are not available. *See Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246; *see also Mann v. American W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.").

¶16    Quoting *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, 447 P.3d 123, Ward points out that a "district court should not dismiss alternative equitable claims if the existence or applicability of a contract remain in dispute." *Id.* ¶ 22 (quotation simplified). She asserts that the court resolved questions of the contract's validity and enforceability against her by determining that she could not recover damages for emotional harm. But the validity and enforceability of the contract were not at issue—only Ward's ability to prove damages was.

¶17    Ward argues that her promissory estoppel claim was not properly dismissed because "there was an ongoing dispute as to the validity of the contract." However, the record does not evidence any such dispute. Ward asserted the validity of the contract by bringing a breach of contract claim against McGarry. And McGarry's motion to dismiss never disputed the contract's enforceability, instead asserting only that Ward's claim was barred by the statute of limitations and that she could not recover emotional damages for the breach of contract. The court even acknowledged that "McGarry breached their agreement when he did not delete the photos."

¶18    In *AGTC*, the district court granted partial summary judgment on a counterclaim plaintiff's unjust enrichment claim while its contract claims remained pending. *Id.* ¶ 8. Later, the court granted summary judgment to the counterclaim defendant on the contract claims on the ground that the counterclaim plaintiff was ineligible to enforce the contract due to Utah's non-recovery rule. *Id.* ¶ 9. This court reversed the district court's summary judgment ruling on the contract claims, determining that the non-recovery rule did not apply. *Id.* ¶ 18. This court then also reversed the summary judgment ruling on the unjust enrichment claim, explaining,

> Because the district court made no determination
> regarding whether [the] remaining claims and

defenses dealt with the enforceability of the [parties' agreement], we are concerned that its ruling left the door open to such claims at trial while foreclosing [the counterclaim plaintiff's] ability to pursue an equitable remedy if the court were ultimately to determine that the [agreement] is unenforceable.

*Id.* ¶ 23. *See generally id.* ¶ 23 n.7 ("For example, [the counterclaim plaintiff] asserted that one of [the counterclaim defendant's] defenses could result in the Court deciding there was no meeting of the minds as to the contract's essential terms, rendering the contract unenforceable. If [the counterclaim plaintiff] is correct in its characterization of [the counterclaim defendant's] defense, and if the court ultimately found that there was no meeting of the minds, then the court's summary judgment ruling would leave [the counterclaim plaintiff] without either a legal or an equitable remedy." (quotation simplified)).

¶19    Unlike in *AGTC*, where several potential arguments and defenses that at least arguably concerned the enforceability of the contract remained unresolved when the court granted partial summary judgment on the unjust enrichment claim, neither party here suggested that the enforceability of the contract was in dispute. Similarly, Ward did not argue that her claim for promissory estoppel should not be dismissed on the basis that the contract was unenforceable. Thus, there was no reason for the district court to delay its ruling on the basis that the enforceability of the contract was unresolved.

¶20    The fact that the contract did not provide for the recovery of emotional damages is not the same as a contract not existing or being unenforceable, and it does not open the door for Ward to pursue a quasi-contract claim regarding the same subject matter covered by the express contract. A quasi-contract claim cannot be used to "make a better contract for the parties than they have made for themselves." *See Hillcrest Inv. Co. v. Department of*

*Transp.*, 2015 UT App 140, ¶ 17, 352 P.3d 128 (quotation simplified).

¶21   Because it was undisputed that an enforceable contract existed that required McGarry to delete the photos, Ward could not recover damages not provided for in the contract under a promissory estoppel theory.

## III. Tort Claims

¶22   Next, Ward argues that the district court erred in ruling that the economic loss rule barred her tort claims. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 70, 436 P.3d 151 (quotation simplified). Under the economic loss rule, "[i]f the tort alleges a breach of a duty that the contract itself imposes . . . the plaintiff can sue only for contract-based remedies." *Id.* ¶ 71. "However, if the tort claim alleges a breach of a duty that is separate and distinct from any contractual duty existing between the parties"—an independent duty—"the plaintiff can proceed with that separate, non-contract claim." *Id.* ¶ 72.

¶23   Here, the contract imposed a duty on McGarry to delete the photos. Thus, any tort claim arising out of that duty would be barred by the economic loss rule. On appeal, Ward asserts that McGarry breached an independent duty to not show her nude photos to others. However, Ward did not preserve this argument for our review.

¶24   In her argument to the district court, the only independent duty Ward raised was that McGarry had "a duty to keep any harmful material away from children" and that he breached that

duty by not preventing his child from accessing the nude photos. But this is a duty McGarry allegedly owed to his child, not to Ward. And Ward never mentioned to the district court the duty she now advocates on appeal—that McGarry owed her an independent duty in tort not to show her nude photos to others.[5] Because Ward did not present this specific argument to the district court in a manner that gave the court an opportunity to rule on it, her independent-duty argument is unpreserved. *See Wolferts v. Wolferts*, 2013 UT App 235, ¶ 19, 315 P.3d 448 ("An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on that issue. To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." (quotation simplified)). And without establishing that McGarry owed Ward an independent duty apart from his contractual duties, Ward cannot demonstrate that the district court erred in applying the economic loss rule to bar her tort claims.

## IV. Punitive Damages

¶25 Finally, Ward asserts that the district court erred in dismissing her claim for punitive damages. The court explained that "punitive damages is not a proper independent claim and all of the claims under which punitive damages might be available to [Ward] are barred by the economic loss rule."

¶26 Ward does not challenge the court's determination that a claim for an award of punitive damages is not a proper independent claim. Instead, she asserts that her punitive damages request "was tied to her tort claims" and should be reinstated "if this court reinstates her tort claims." Because we conclude that the

---

5. We assume without deciding that such a duty might exist and that its breach might give rise to a tort claim.

court correctly dismissed Ward's tort claims, we have no basis to reinstate her punitive damages claim.

CONCLUSION

¶27 The district court correctly determined that the parties' contract did not support a claim for emotional damages, that a promissory estoppel claim was not available, that the economic loss rule barred Ward's tort claims, and that without a viable tort claim, Ward could not pursue a claim for punitive damages. Accordingly, we affirm the district court's dismissal of Ward's complaint.

———————